**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| Thomas Fortune Fay and<br>The Fay Law Group, P.A.,<br><br>                  Petitioners,<br><br>v.<br><br>Allen L. Rothenberg, Esq.,<br>The Law Firm of Allen L. Rothenberg, and<br>The Rothenberg Law Firm LLP,<br><br>                  Respondents. | Civil Action No. 1:25-cv-7613 |
| Allen L. Rothenberg, Esq.,<br>The Law Firm of Allen L. Rothenberg, and<br>The Rothenberg Law Firm LLP,<br><br>                  Cross-Petitioners,<br><br>v.<br><br>Thomas Fortune Fay and The Fay Law Group,<br>P.A., Steven R. Perles, Perles Law Firm, P.C.,<br>and Fay and Perles FSIA Litigation Partnership,<br><br>                  Cross-Petition Respondents. | |
| Steven R. Perles, Esq. and<br>Perles Law Firm, P.C.,<br><br>                  Petitioners,<br><br>v.<br><br>Allen L. Rothenberg, Esq.,<br>The Law Firm of Allen L. Rothenberg, and<br>The Rothenberg Law Firm LLP,<br><br>                  Respondents. | Civil Action No. 1:25-cv-8219 |

Fay and Perles FSIA Litigation Partnership,

Petitioner,

v.

Allen L. Rothenberg, Esq.,
The Law Firm of Allen L. Rothenberg, and
The Rothenberg Law Firm LLP,

Respondents.

Civil Action No. 1:25-cv-8281

**PERLES' MEMORANDUM OF LAW IN SUPPORT OF THEIR
PETITION TO VACATE ARBITRAL AWARD AND IN OPPOSITION TO
ROTHENBERG'S PETITION TO CONFIRM ARBITRAL AWARD**

**[ORAL ARGUMENT REQUESTED]**

**MORRISON COHEN LLC**

Danielle C. Lesser
Edward P. Gilbert
909 Third Avenue
New York, NY 10022
(212) 735-8600

*Attorneys for Steven R. Perles, Esq.
and Perles Law Firm, P.C.*

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT...................................................................................................... 1

FACTUAL BACKGROUND ....................................................................................................... 4

      A.     Perles and Fay File and Pursue *Peterson*, and Confirm Their Agreement with Rothenberg Regarding The Division of Fees Via the Co-Counsel Agreement. ...................................................................................................... 4

      B.     Perles and Fay Commence Enforcement Litigation Relating to the Clearstream Assets, the Distribution of Which Depends Entirely on Consent to the Marine's Cooperation Agreement. .............................................................. 5

      C.     Rothenberg, Fay, and Perles Submit a Limited Fee Dispute to Arbitration Concerning the Dilution of Rothenberg's Fees in *Peterson* by Virtue of the Marines Cooperation Agreement. ........................................................................ 7

            1.     The Sanctions Award. .................................................................... 8

            2.     The Final Award.................................................................... 11

LEGAL STANDARD ................................................................................................................ 13

ARGUMENT ............................................................................................................................ 14

    I.     THE SANCTIONS AWARD SHOULD BE VACATED............................................... 14

      A.     The Sanctions Award exceeded the Arbitrator's authority under 9 U.S.C. § 10(a)(4) ...................................................................................................... 14

          i.    *The Sanctions Award exceeded the scope of the Arbitration and JAMS Rule 29.* ........................................................................................... 15

          ii.   *Even if the Sanctions Award was within the scope of the parties' Arbitration Agreement, the Arbitrator violated JAMS Rule 29.* ........................ 17

          iii.  *The Arbitrator exceeded his authority by issuing a draconian sanctions award.* ....................................................................................... 19

    II.    THE FINAL AWARD SHOULD BE VACATED........................................................ 22

      A.     The Final Award exceeded the Arbitrator's authority under 9 U.S.C. § 10(a)(4) ...................................................................................................... 23

      B.     The Arbitrator Manifestly Disregarded the Law in Issuing the Final Award........ 25

          i.    *The Final Award manifestly disregarded the law on unjust enrichment.* .......... 25

          ii.   *The Final Award manifestly disregarded the law on unclean hands.* ............... 26

CONCLUSION......................................................................................................................... 28

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Beth Isr. Med. Ctr. v. Horizon Blue Cross & Blue Shield of N.J., Inc.*,
   448 F.3d 573 (2d Cir. 2006)............................................................................................25, 26

*BLT Rest. Grp. LLC v. Tourondel*,
   2011 U.S. Dist. LEXIS 81348 (S.D.N.Y. July 19, 2011) ....................................................26

*Bulkmatic Transp. Co. v. Pappas*,
   2002 U.S. Dist. LEXIS 8360 (S.D.N.Y. May 9, 2002)........................................................19

*Certain Underwriters at Lloyd's, Lond. v. Argonaut Ins. Co.*,
   264 F. Supp. 2d 926 (N.D. Cal. 2003) ................................................................................15

*Cohn & Berk v. Rothman-Goodman Mgmt. Corp.*,
   125 A.D.2d 435 (2d Dep't 1986) ........................................................................................27

*Eletson Holdings, Inc. v. Levona Holdings Ltd.*,
   731 F. Supp. 3d 531 (S.D.N.Y. 2024)..................................................................................16

*Fahnestock & Co., Inc. v. Waltman*,
   935 F.2d 512 (2d Cir. 1991)..........................................................................................13, 22

*Fay et al. v. Rothenberg et al.*,
   No. 1:25-cv-07613-LAP ........................................................................................................1

*G & G Invs., Inc. v. Revlon Consumer Prods. Corp.*,
   283 A.D.2d 253 (1st Dep't 2001) ..................................................................................26, 27

*Halligan v. Piper Jaffray, Inc.*,
   148 F.3d 197 (2d Cir. 1998).................................................................................................13

*Interchem Asia 2000 PTE Ltd. v. Oceana Petrochemicals AG*,
   373 F. Supp. 2d 340 (S.D.N.Y. 2005)............................................................................15, 17

*Jock v. Sterling Jewelers, Inc.*,
   703 F. App'x 15 (2d Cir. 2017) ...........................................................................................13

*KX Reinsurance Co. v. Gen. Reinsurance Corp.*,
   2008 U.S. Dist. LEXIS 92717 (S.D.N.Y. Nov. 14, 2008)....................................................25

*Melun Indus. v. Strange*,
   898 F. Supp. 990 (S.D.N.Y. 1990) ................................................................................13, 24

*N.Y. Stock Exch. Arb. v. Shearson Lehman Hutton Inc.*,
    948 F.2d 117 (2d Cir. 1991)................................................................................................22

*N.Y. Tel. Co. v. Communs. Workers Loc. 1100*,
    256 F.3d 89 (2d Cir. 2001)..................................................................................................13

*Newsday, Inc. v. Long Island Typographical Union*,
    915 F.2d 840 (2d Cir. 1990).................................................................................................22

*Perles et al. v. Rothenberg et al.*,
    No. 1:25-cv-08219-UA ..........................................................................................................1

*Pichardo v. Koenig*,
    2018 NY Slip Op 51839(U) (1st Dep't 2018) ....................................................................28

*Radiancy, Inc. v. Viatek Consumer Prods. Grp.*,
    138 F. Supp. 3d 303 (S.D.N.Y. 2014)................................................................................27

*Republic of the Phil. v. Westinghouse Elec. Corp.*,
    43 F.3d 65 (3d Cir. 1994).....................................................................................................17

*Schwartz v. Merrill Lynch & Co.*,
    665 F.3d 444 (2d Cir. 2011)...........................................................................................22, 28

*Sorenson v. Winston & Strawn, LLP*,
    162 A.D.3d 593 (1st Dep't 2018) ........................................................................................27

*Stolt-Nielsen S. A. v. AnimalFeeds Int'l Corp.*,
    559 U.S. 662 (2010).......................................................................................................13, 24

*Subway Int'l, B.V. v. Subway Russ. Franchising Co., LLC*,
    2021 U.S. Dist. LEXIS 235335 (S.D.N.Y. Dec. 8, 2021) .................................................24

*Weiss v. Sallie Mae, Inc.*,
    939 F.3d 105 (2d Cir. 2019)................................................................................................13

**Rules and Statutes**

9 U.S.C. §§ 1-16 .......................................................................................................................1

9 U.S.C. § 10...............................................................................................................1, 13, 14, 23

22 NYCRR 1200.0.................................................................................................................22, 28

D.C. Rule of Professional Conduct Rule 1.5(e)....................................................................22, 28

Petitioners and Cross-Petition Respondents Steven R. Perles, Esq. and Perles Law Firm, P.C. (collectively, "Perles")[1] respectfully submit this Memorandum of Law in support of their petition (the "Petition") (Dkt. 1)[2] filed in connection with the action captioned *Perles et al. v. Rothenberg et al.*, No. 1:25-cv-08219-UA ("Perles Action") to vacate the final award (the "Final Award") (Dkt. 1-15), dated July 7, 2025, in *Rothenberg v. Fay, et al.*, JAMS Ref. No. 1425036110 (the "Arbitration"), pursuant to the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1-16, including 9 U.S.C. §§ 10 and 12; and in opposition to Respondents' and Cross-Petitioners' Allen L. Rothenberg, Esq., The Law Firm of Allen L. Rothenberg, and The Rothenberg Law Firm LLP (collectively, "Rothenberg") cross-petition filed in connection with the related action captioned *Fay et al. v. Rothenberg et al.,* No. 1:25-cv-07613-LAP ("Fay Action") to confirm the Final Award ("Cross-Petition").

## PRELIMINARY STATEMENT

This Petition is necessitated by an improper arbitration award, which exceeded the Arbitrator's authority and manifestly disregarded the law to reward Rothenberg's bad-faith efforts to pursue Perles, as well as other co-counsel, Fay, for millions of dollars in undeserved and unearned attorneys' fees. Rothenberg has already collected over $59 million in fees for doing nothing more than locating and referring a subset of potential plaintiffs to Perles and Fay—work that Rothenberg outsourced to a non-attorney third party for a mere few thousands of dollars. Thereafter, Rothenberg brought the underlying Arbitration to try to recover even more fees, while also challenging Perles and Fay's representation of their joint clients. Despite Rothenberg's unabashed greed and the express terms of a contract between the parties, the Arbitrator issued an

---

[1] All undefined capitalized terms shall have the meanings ascribed to them in the Petition.

[2] All "Dkt." cites refer to the documents filed to the Perles Action docket.

excessive and flawed award in Rothenberg's favor, not only granting him millions of dollars in fees, but also sanctioning Perles over $11 million (the "Sanctions Award") for alleged failures by Fay (not Perles) to disclose to Rothenberg communications that Fay made in furtherance of the ethical duty to inform clients of Rothenberg's misconduct. The Final Award, which directly incorporates the Sanctions Award, exceeded the Arbitrator's authority and manifestly disregarded the law in a number of ways.

*First*, the Sanctions Award exceeded the Arbitrator's authority by deciding allegations and issues which were entirely separate from the specific Fee Dispute submitted to Arbitration. Whereas the Arbitration Agreement memorialized the parties' 2017 agreement to arbitrate the limited issue of the dilution of Rothenberg's fee in *Peterson* when his clients agreed to the Marines Cooperation Agreement in 2012, the Sanctions Award rested on a finding that Perles and Fay attempted to "steal" Rothenberg's fees by allegedly having *Peterson* plaintiffs discharge him in 2024 and 2025, years after the commencement of the Arbitration and after the final Arbitration hearing had already concluded and post-hearing briefs had been submitted.

The Sanctions Award also exceeded the Arbitrator's authority under JAMS Rule 29, which only permits sanctions based on a party's failure to comply with JAMS' Rules or an order of the Arbitrator. Not only did the Arbitrator punish Perles for communications made solely by Fay, but the Arbitrator ***never*** prohibited Perles or Fay from making such communications. When Perles pointed out this error in a motion for reconsideration, the Arbitrator simply deleted his erroneous assertion that he had prohibited such communications, changed the basis of the sanction to a failure to notify, and otherwise left the Sanctions Award unchanged.

Rothenberg also never alleged any harm that resulted from the supposedly sanctionable conduct, the alleged failure *to inform him* of the communications. Ultimately, the Arbitrator

2

awarded Rothenberg what could amount to over $11 million as sanctions—against both Fay AND Perles—for conduct that allegedly violated an order that was never issued, and which, regardless, fell far outside the scope of the Arbitration Agreement.

*Second*, the Final Award exceeded the Arbitrator's authority by ruling on a supposed "branch" of Rothenberg's unjust enrichment claim that was neither contemplated by the Arbitration Agreement nor asserted in the Demand. Having ruled against each of Rothenberg's asserted claims seeking recovery for the dilution of his attorneys' fees in *Peterson*, the Arbitrator awarded Rothenberg relief on an unpled theory of unjust enrichment based Perles' and Fay's negotiation of fees for the use of *Peterson* "work product" in other actions without Rothenberg. However, as the Arbitrator expressly recognized, the Co-Counsel Agreement—the contract underlying the arbitrable Fee Dispute and Rothenberg's asserted claims—did not give Rothenberg any rights to share in fees from future cases using *Peterson* work product; indeed, in negotiating that agreement, the parties expressly rejected such a provision.

Moreover, the Final Award manifestly disregarded well-defined, controlling law on unjust enrichment and unclean hands. Despite concluding that the Co-Counsel Agreement was a valid contract, the Arbitrator held that it did not bar Rothenberg's unjust enrichment claim concerning fees resulting from *Peterson* work product. Accordingly, the Arbitrator manifestly disregarded the law barring unjust enrichment claims where a contract exists. The Arbitrator also failed to address Perles' affirmative defense of unclean hands which barred Rothenberg's claim for equitable relief. Rothenberg's numerous acts of misconduct during the Clearstream Asset collection effort, which diluted *Peterson* plaintiffs' recovery and attorneys' fees to which Perles and Fay were entitled to Rothenberg's own benefit, should bar him from relying on unjust enrichment to recover from Perles and Fay.

Accordingly, and for the reasons set out in greater detail below, the Final Award, which incorporates the Sanctions Award, should be vacated in its entirety.

**FACTUAL BACKGROUND**

Perles respectfully refers the Court to their Petition for a more complete background concerning the Arbitration and the underlying dispute between Rothenberg, Perles, and Fay. For the purposes of this Memorandum of Law, Perles provides the following summary.

A.     **Perles and Fay File and Pursue *Peterson*, and Confirm Their Agreement with Rothenberg Regarding the Division of Fees Via the Co-Counsel Agreement**.

In 1983, Iran carried out a truck bomb targeting American forces, which exploded at a U.S. Marine barracks in Lebanon. (Dkt. 1 ¶ 2). The atrocity, which killed 241 U.S. servicemen, including 220 Marines, is among the deadliest attacks on U.S. military personnel in recent history. (*Id.*). In early 2001, Perles and Fay formed a joint venture to pursue claims on behalf of the victims of the families of the Marines and U.S. personnel affected by the bombing (collectively the "Beirut Marines"). (*Id.* ¶ 4). Perles and Fay engaged Rothenberg in June 2001 as referring counsel, solely to locate potential plaintiffs. (*Id.*).

On Rothenberg's promise to provide a team and resources to locate each member of the affected families, Perles and Fay agreed to pay Rothenberg one third of any net attorney fees realized for his referred individuals. (*Id.*). Perles and Fay later learned that Rothenberg breached his promises and outsourced virtually all of his investigative efforts to a single, non-attorney third party whom he paid less than $8,000. (*Id.*). Perles and Fay, on the other hand, performed substantive (and substantial) legal work, assembling the case that eventually became the *Peterson* action. While Rothenberg referred only a portion of the 811 plaintiffs in *Peterson*, Perles and Fay served Iran with process and prevailed in a bench trial in 2003. (*Id.* ¶ 5). In September 2007, after

4

years of additional damages work by Perles and Fay and other attorneys (not Rothenberg), they secured a $2.66 billion judgment against Iran. (*Id.*).

On November 28, 2007, Perles, Fay, and Rothenberg entered the Co-Counsel Agreement, memorializing anew their agreement to divide evenly between them attorneys' fees attributable to the approximately 560 plaintiffs that Rothenberg referred in *Peterson.* (Dkt. 1-3). In negotiating the Co-Counsel Agreement, Rothenberg proposed a "further" agreement regarding the division of fees in potential future cases resulting from *Peterson*'s publicity, which Perles and Fay expressly rejected. (Dkt. 1-2).

> **B.    Perles and Fay Commence Enforcement Litigation Relating to the Clearstream Assets, the Distribution of Which Depended Entirely on Consent to the Marine's Cooperation Agreement**.

Due to Rothenberg's shoddy investigative efforts which failed to uncover all the Beirut Marines, Perles and Fay and others filed additional actions against Iran ("Follow-On Cases") on behalf of other plaintiffs, all of which relied on the evidentiary path forged by Perles and Fay in *Peterson.* Perles and Fay signed up plaintiffs in "Direct Follow-On Cases," which originated from the publicity of *Peterson*, while "Indirect Follow-On Cases" were brought by other attorneys altogether which still relied Perles' and Fay's work in *Peterson*. (*Id.* ¶¶ 51-52). During this time, Rothenberg also participated in separate actions against Iran that did not involve the 1983 truck bombing. (*Id.* ¶¶ 59-60).

As soon as the Court entered damages judgments in *Peterson* in 2007, Perles and Fay began collection efforts, resulting in their discovery of roughly $2.1 billion worth of Iranian assets held in a branch of Citibank in New York City ("Clearstream Assets"). (*Id.* ¶¶ 55-56). At the same time Perles and Fay sought an order directing the turnover of the Clearstream Assets on behalf of *Peterson* plaintiffs, the plaintiffs in Rothenberg's four unrelated actions ("Rothenberg Intervenors") likewise sought to recover from the Clearstream Assets, in competition with

Rothenberg's other clients, *Peterson* plaintiffs. (*Id.* ¶ 60). Instead of entering his appearance as counsel in these cases, Rothenberg had hired Stroock & Stroock & Lavan LLP ("Stroock") to represent those plaintiffs (and himself personally) in pursuing collections against Iran, and intervening in the Clearstream Turnover Action. (*Id.* ¶¶ 60, 190). This troubling development constituted a clear conflict of interest for Rothenberg's representation of *Peterson* plaintiffs, as some the Rothenberg Intervenors argued in the Clearstream Turnover Action that their claims had priority over *Peterson* plaintiffs' claims, which threatened *Peterson* plaintiffs' ability to collect at all. (*Id.* ¶¶ 61-621).

As a result of competing claims to the Clearstream Assets, Perles and Fay negotiated the Marines Cooperation Agreement, pursuant to which *Peterson* plaintiffs and Follow-On plaintiffs agreed to share the funds recovered in an amount proportional to their respective damages. (*Id.* ¶¶ 67-68). Perles and Fay also negotiated the Litigation Cooperation and Settlement Agreement (together with the Marines Cooperation Agreement, "Sharing Agreements"), which directed that 87% of the funds recovered from the Clearstream Assets would be directed to Beirut Marines, and the remaining 13% to plaintiffs whose claims arose out of different Iranian attacks than the Beirut Marines bombing. In order to permit the recovery of the Clearstream Assets, Perles lobbied Congress to pass the Iran Threat Reduction and Syria Human Rights Act ("Act"). (*Id.* ¶¶ 69-70). A critical piece to ensuring Congress' passage of the Act was Perles' assurance that all victims of Iran-backed terrorism—including all of the victims of the 1983 bombing and all of other Iran-backed terror attacks—had agreed to share the Clearstream Assets, pursuant to the Sharing Agreements. (*Id.* ¶¶ 74-75). The Act would not have been passed without proof of these agreements to share the Iranian funds among a wider group of victims (as opposed to the victims of a single case). (*Id.*).

**C.**      **Rothenberg, Fay, and Perles Submit a Limited Fee Dispute to Arbitration Concerning the Dilution of Rothenberg's Fees in *Peterson* by Virtue of the Marines Cooperation Agreement**.

Rothenberg learned of the Marines Cooperation Agreement when the Clearstream Assets were ultimately distributed in June 2017. (Dkt. 1-15 at 19). Upon discovering the arrangement, Rothenberg took issue with how the Sharing Agreements would dilute his fee in *Peterson* (*id.* 19-20), notwithstanding that (i) such an arrangement was necessary for Congressional passage of the Act, (ii) *Peterson* clients had demanded sharing for all victims of the 1983 bombing under the Marine Corps philosophy of "no man left behind," and (iii) Rothenberg's own clients in *Peterson* had universally ratified the Agreement. Accordingly, the parties entered into the Arbitration Agreement on December 4, 2017 concerning the issue of Rothenberg's purported fee dilution. (Dkt. 1-6). As stated in the Arbitration Agreement, the specifically defined "Fee Dispute" subject to arbitration "is over whether Rothenberg is entitled to compensation from Perles and Fay caused by and/or related to sharing agreements between the plaintiffs and/or their attorneys in the Beirut Marine Cases … and Marine victim and family plaintiffs (not represented by Rothenberg) and/or their attorneys in other actions against the Islamic Republic of Iran." (*Id.*).

Consistent with the limited scope of the Arbitration Agreement, Rothenberg's Demand sought damages arising from the dilution of Rothenberg's fees under the Co-Counsel Agreement, resulting from the Marines Cooperation Agreement. (Dkt. 1-7 ¶ 18). Specifically, because the Co-Counsel agreement entitled Rothenberg to one-third of the net attorneys' fees achieved in *Peterson*, the Demand sought only to recover damages concerning the dilution of Rothenberg's fee in *Peterson* by allowing other Iran-backed terrorism victims to share in the recovery. In other words, Rothenberg's claims arose from the diminution of his one-third interest in the fees generated *Peterson* plaintiffs' recovery by virtue of the recovery of all other victims of Iran-backed terrorism. Rothenberg pursued these damages pursuant to specific theories of breach of contract,

7

unjust enrichment, and declaratory judgment. (*See id.* ¶ 40 (alleging Respondents "breached the Co-Counsel agreement and enriched themselves at Rothenberg's expense when they recovered from certain of the attorneys in the Follow-On Actions … but failed to account to Rothenberg under the Co-Counsel agreement"); ¶ 45 (seeking "declaratory judgment setting forth his entitlement to future attorneys' fees under the Co-Counsel Agreement sufficient to remedy the dilution")).

At the outset of the proceedings, the Arbitrator defined the scope of the Arbitration as confined to the specific Fee Dispute presented in the Demand, stating "[t]he claims are set forth in [Rothenberg's] Demand for Arbitration," and "the parties have no intention to amend or supplement their respective pleadings." (Dkt. 1-8 ¶ 4). The Final Award also explained that "[t]he claims are set forth in [the] Demand for Arbitration," and identified the narrow issue submitted to Arbitration, stating that after Rothenberg "raised with the Respondents the issue of his fee dilution by virtue of the Marines Cooperation agreement … [t]he parties later entered into the December 4, 2017, Arbitration Agreement to submit the fee dispute to binding arbitration with JAMS." (Dkt. 1-15 at 19-20).

The Final Award is essentially two awards in one. (Dkt. 1-15). The majority of the Final Award addresses the Fee Dispute as defined by the Arbitration Agreement. The latter portion of the Final Award incorporates a corrected Sanctions Award (*see* Dkt. 1-14), *nunc pro tunc* to April 10, 2025. (Dkt. 1-15 at 75). The two portions address different subjects entirely.

    1.    The Sanctions Award.

The Sanctions Award addresses conduct outside the Arbitration and purports to grant relief that was not subject to the parties' Arbitration Agreement. On April 16, 2024, while the Arbitration was pending, Perles and Fay wrote to *Peterson* plaintiffs ("April 16 Letter"), informing them that certain testimony given by Rothenberg in the Arbitration raised questions about his ability to

zealously represent them and revealed that he disagreed with Perles' and Fay's decision to share Iranian assets with other Marines plaintiffs because it meant decreasing Rothenberg's fees. (Dkt. 1-10). Perles and Fay sent the April 16 Letter after ethics counsel advised that they had a nondiscretionary ethical obligation to inform the clients of the concerns regarding Rothenberg's conduct. (*See* Dkt. 1-13 at 19-21). None of the Arbitrator's orders nor JAMS Rules prohibited the letter.

Shortly after its issuance, Rothenberg requested the Arbitrator require Perles and Fay to retract the April 16 Letter. (Dkt. 1 ¶ 98). The Arbitrator refused and did not prohibit Perles and Fay from communicating further with *Peterson* plaintiffs. (*Id.*). Instead, in Procedural Order 6, the Arbitrator ordered Perles and Fay to provide Rothenberg the names and addresses of all the clients who received the letter, so that Rothenberg could send his own letter in response. On May 28, 2024, Rothenberg wrote *Peterson* plaintiffs to ask that they "reserve judgment until receiving [his] response" to the April 16 Letter, "which may or may not come before the arbitration is resolved." (*Id.*). But Rothenberg never sent the promised follow-up. (*Id.*).

Following the April 16 Letter, the Arbitrator also issued Procedural Order 7, which required Perles and Fay to, among other things, provide Rothenberg with a "detailed written statement of all communications with the Peterson Plaintiffs … regarding [Rothenberg], the April 16, 2024 letter, or the subject of this arbitration … [and] the same detailed information for any past, present and future communications with the Peterson Plaintiffs." (Dkt. 1-11 at 9-10). Procedural Order 7 did not prohibit Perles' and Fay's contact with their clients, it only required disclosure of such communications to Rothenberg. (*Id.*).

On September 25, 2024, the Arbitration's proceedings closed, and in January 2025, the parties submitted final post-hearing briefs. (Dkt. 1 ¶ 91). Months later, on March 17, 2025,

Rothenberg filed a motion for sanctions or, alternatively, to amend his demand. (*Id.* ¶ 105). In this motion, Rothenberg submitted evidence that Fay (not Perles) had failed to disclose certain communications with *Peterson* plaintiffs in violation of Procedural Order 7 and accused Perles and Fay of working to facilitate an effort to challenge Rothenberg's fees. (*Id.* ¶ 106). The Arbitrator issued an interim award in Rothenberg's favor on April 10, 2025. (Dkt. 1-12). Concluding that Perles and Fay had violated an order he thought he had issued which enjoined them from "communicating any adverse information about the Claimant to any of the *Peterson* plaintiffs or their counsel until the Final Award is issued in this arbitration" (*id.* at 5), the Arbitrator characterized, without further explanation, that Fay's communications with *Peterson* plaintiffs as "an attempt to undermine" his ability to provide "the relief sought by the Claimant in his Demand for Arbitration, particularly his request for declaratory relief." (*Id.* at 14). Parenthetically, the request for declaratory relief was ultimately denied. Then, without any hearing on whether any order was violated (it was not), the Arbitrator drew an "adverse inference" that Perles and Fay were "cloaking themselves in the Rules of Professional Conduct to steal the Claimant's fees derived from the plaintiffs Rothenberg represents in the *Peterson* Action." (*Id.* at 22).

On this basis, the Arbitrator awarded Rothenberg, among other things, the payment by Perles and Fay of "any shortfall in attorneys' fees from the Peterson plaintiffs that [Rothenberg] represented ... due to [Rothenberg's] discharge of representation of any of them, and the attorneys' fees he collects from their recoveries in the 650 Fifth Avenue and USVSST, or any other matters from which these clients recover." (*Id.* at 23). In other words, the Arbitrator determined that if Rothenberg's clients discharged him, such discharge was due entirely to Fay's actions, and by extension, Perles', without regard to the actual circumstances of his discharge. As a consequence, the Arbitrator ordered both Perles and Fay to pay Rothenberg all fees that he loses out on due to

10

*Peterson* plaintiffs terminating him as their attorney, even if these fees arise as part of future collection efforts on Iranian assets, and even if a court found that Rothenberg had been terminated for cause as a result of ethical misconduct. This sanction alone could be worth more than $11 million, and is almost incalculable, given the indefinite nature of the Sanctions Award which applies to fees collected for "any" future matters from which *Peterson* plaintiffs recover on their judgments after terminating Rothenberg. In essence, the Arbitrator used sanctions to order Perles and Fay to fill the role of Rothenberg's malpractice insurer in the event the clients were vindicated in their for-cause termination of Rothenberg.

Following the Interim Award, Perles and Fay moved for the Arbitrator to reconsider his sanctions for a number of reasons. (Dkt. 1-13). One reason was that the Arbitrator had never enjoined Perles and Fay from communicating adverse information to *Peterson* plaintiffs or their counsel. Instead, in Procedural Order 7, the Arbitrator had only required Perles and Fay to disclose relevant communications to Rothenberg. (*Id.* at 4-5). Moreover, Perles submitted evidence that he never violated the Arbitrator's order, and that he and Fay actively sought to avoid enriching themselves in the event that *Peterson* plaintiffs terminated Rothenberg. (*Id.* at 16-17). Despite these crucially important corrections by Perles, the Arbitrator did not reconsider his sanctions. Instead, the Arbitrator corrected the Sanctions Award by merely removing that erroneous language—correcting the basis for his sanctions to mere nondisclosure—and left the same sanctions in place. (*Compare* Dkt. 1-12 at 5, *with* Dkt. 1-14 at 5).

2. The Final Award.

The Final Award ruled against Rothenberg on his asserted claims in connection with the specific Fee Dispute submitted to Arbitration. The Arbitrator specifically concluded that Perles and Fay had not breached the Co-Counsel Agreement by entering into the Marines Cooperation Agreement because, among other things, they entered the agreement on behalf of their clients, not

11

personally. (Dkt. 1-15 at 40-42). The Arbitrator also rejected Rothenberg's theory of unjust enrichment—pled solely in the alternative to his breach of contract claim—because the Co-Counsel Agreement at issue was valid and governed the fee dispute. (*Id.* at 43-44). Finally, the Arbitrator concluded Rothenberg's declaratory judgment claim was also doomed because it was also based on the Co-Counsel Agreement, which Perles and Fay did not breach. (*Id.* at 51-52).[3]

Despite ruling against each of the claims asserted in Rothenberg's Demand, the Arbitrator still decided in his favor in the Final Award. The Arbitrator determined that there was a "second branch" of Rothenberg's unjust enrichment claim concerning Perles and Fay negotiating fees for themselves in the Indirect Follow-On Cases without including Rothenberg. (*Id.* at 43). However, this "branch" of recovery was not contemplated by the Arbitration Agreement and nowhere to be found in Rothenberg's Demand. (Dkt. 1-7). Nevertheless, the Arbitrator concluded that (i) materials from the *Peterson* action were analogous to joint work product which Perles and Fay had exploited for themselves to Rothenberg's exclusion, and (ii) the existence of the Co-Counsel Agreement did not foreclose this different form of unjust enrichment "because it had nothing to do with the use of Peterson work product." (Dkt. 1-15 at 44-49). For this unpled claim, the Arbitrator awarded Rothenberg $6,589.416.00 in damages. (*Id.* at 79). As with the Sanctions Award, the Final Award is forward looking over an indefinite timeline as it also awards Rothenberg "21.6% of any future legal fees payable to [Perles and Fay], directly or indirectly, from any future recovery on account of the ... Indirect Follow-On cases." (*Id.* at 81).

---

[3] Given that the Sanctions Award was based in part on the Arbitrator's unfounded concern that Fay's undisclosed communications could undermine the Arbitrator's ability to provide declaratory relief in the event he ultimately found that the Marine's Cooperation Agreement improperly diluted Rothenberg's fees in Peterson, the Final Award's rulings against each of Rothenberg's asserted claims concerning the Fee Dispute renders the Sanctions Award (which was incorporated into the Final Award) all the more unreasonable. (Dkt. 1-15 at 14-15).

## LEGAL STANDARD

Under Section 10(a)(4) of the Federal Arbitration Act ("FAA"), this Court may vacate an arbitration award "where the arbitrators exceeded their powers." 9 U.S.C. § 10(a)(4). The Court's focus in such cases is on "whether the arbitrator[] had the power, based on the parties' submission or the arbitration agreement, to reach a certain issue…." *Jock v. Sterling Jewelers*, *Inc*., 703 F. App'x 15, 17 (2d Cir. 2017) (internal quotations and citation omitted). Accordingly, "courts will vacate an award where the arbitrator has ruled on issues not presented to him by the parties, or otherwise exceeded the scope of the authority granted to him by the contractual provision providing for arbitration." *Melun Indus. v. Strange*, 898 F. Supp. 990, 992 (S.D.N.Y. 1990) (citing cases); *see also Stolt-Nielsen S. A. v. AnimalFeeds Int'l Corp.,* 559 U.S. 662, 671 (2010) (noting that an arbitrator exceeds his powers where he "strays from interpretation of the agreement and effectively dispense[s] his own brand of industrial justice") (internal quotations and citations omitted).

The Second Circuit also recognizes that an arbitration award may be vacated if it is "in manifest disregard of the law" as a judicial gloss on, or an independent basis from, the FAA. *Weiss v. Sallie Mae, Inc*., 939 F.3d 105, 107 (2d Cir. 2019); *see also Fahnestock & Co., Inc. v. Waltman,* 935 F.2d 512, 519 (2d Cir. 1991) (vacating portion of arbitral award mandating punitive damages as contrary to New York law prohibiting arbitrators from ordering punitive damages); *Halligan v. Piper Jaffray, Inc.,* 148 F.3d 197, 204 (2d Cir. 1998) (reversing confirmation of arbitration award where arbitrators "manifestly disregarded the law or the evidence or both"); *N.Y. Tel. Co. v. Communs. Workers Loc. 1100*, 256 F.3d 89, 93 (2d Cir. 2001) (affirming vacatur of arbitration award which was in "manifest disregard of the law").

## ARGUMENT

### I.   THE SANCTIONS AWARD SHOULD BE VACATED

This Sanctions Award was grossly disproportionate to the violation it sought to remedy. At most, Rothenberg showed that Fay (not Perles) had failed to disclose to Rothenberg a handful of emails with *Peterson* plaintiffs that referenced Rothenberg or the Arbitration. Fay's communications were not prohibited, nor were they inflammatory. Nevertheless, the Sanctions Award is likely to result in at least $11 million being awarded to Rothenberg given the clients' likelihood of prevailing in their dispute with Rothenberg. Additionally, this sum could increase given the Sanctions Award's indefinite nature. This draconian Sanctions Award violated numerous principles of law and should be vacated in its entirety.

### A.   The Sanctions Award exceeded the Arbitrator's authority under 9 U.S.C. § 10(a)(4).

The Sanctions Award should be vacated because it exceeded the Arbitrator's authority, as prohibited by Section 10(a)(4) of the FAA. Here, the Arbitrator's authority to order sanctions for any violation of Procedural Order 7 was limited by JAMS Rule 29, which provides an arbitrator the ability to "order appropriate sanctions for failure of a Party to comply with its obligations under any of these Rules or with an order of the Arbitrator." *See JAMS Comprehensive Arbitration Rules & Procedures*, JAMS (June 21, 2021). Such sanctions "may include, but are not limited to, assessment of Arbitration fees and Arbitrator compensation and expenses; assessment of any other costs occasioned by the actionable conduct, including reasonable attorneys' fees; exclusion of certain evidence; [and] drawing adverse inferences." *Id.* Only in "extreme cases" may an Arbitrator determine an issue in the arbitration "adversely to the Party that has failed to comply." *Id.*

Despite these guardrails, the Arbitrator exceeded his authority in several ways, ultimately providing Rothenberg a windfall that eclipses the actual dispute between the parties.

14

###### i.    *The Sanctions Award exceeded the scope of the Arbitration and JAMS Rule 29*.

First, the Sanctions Award exceeded the Arbitrator's authority because it adjudicated a dispute that was not the subject of the parties' Arbitration Agreement. It is well-established that an arbitrator remains bound by the parties' arbitration agreement and may not sanction parties outside the scope of that agreement. *See Interchem Asia 2000 PTE Ltd. v. Oceana Petrochemicals AG*, 373 F. Supp. 2d 340, 359 (S.D.N.Y. 2005) (vacating award in part after court concluded that arbitrators do not have inherent authority to impose sanctions outside the arbitration agreement of the parties); *Certain Underwriters at Lloyd's, Lond. v. Argonaut Ins. Co.,* 264 F. Supp. 2d 926, 945 (N.D. Cal. 2003) (vacating order of arbitrator that imposed monetary, contempt-like sanctions on party because "there [was] no basis in either the FAA or the arbitration agreement for the sanctions imposed"). JAMS Rule 29 conforms with this principle, as even in "extreme cases" of sanctionable conduct, an arbitrator is only authorized to decide the arbitrated dispute, not new issues outside the parties' arbitration agreement.

Here, the Fee Dispute between the parties only concerned whether Rothenberg was "entitled to compensation from Fay and Perles" related to "sharing agreements between the plaintiffs and/or their attorneys" in *Peterson* and the Follow-On cases. (Dkt. 1-6, Recital A). The Sharing Agreements at issue arose over a decade ago, in the years following the underlying *Peterson* action.

But the Sanctions Award reached and addressed entirely separate (and new) issues that arose last year. For example, the Arbitrator's "adverse inference" at the heart of the Sanctions Award concluded that Perles and Fay were attempting to "steal" Rothenberg's fees by having *Peterson* plaintiffs discharge him in 2024 and 2025. This supposedly sanctionable conduct by Perles and Fay was unrelated to the parties' Sharing Agreements and occurred no earlier than the

15

April 16 Letter, years after the Arbitration began. It also was not the subject of the Arbitration's hearing, as Rothenberg only filed his motion for sanctions while the Final Award was pending. Although JAMS Rule 29 does not explicitly require an evidentiary hearing, the lack of any fact-finding into Perles' and Fay's actions (and compliance) not only suggests that the Arbitrator's process was unfair and prejudicial, but also that the sanctions were entirely separate from the parties' arbitrated dispute.

Even Rothenberg and the Arbitrator recognized that the issues were largely separate. When Rothenberg moved for sanctions, he included an alternative request to amend his Demand, conceding that the conduct in question could fall outside the scope of the parties' Arbitration Agreement—which concerns only the limited Fee Dispute related to the dilution of Rothenberg's one-third fee in *Peterson* by virtue of the Marines Cooperation Agreement. Similarly, the Arbitrator did not rely on any facts underlying the Sanctions Award or his purported adverse inference to resolve the claims Rothenberg asserted in his Demand concerning the Fee Dispute actually submitted to Arbitration. Instead, the Arbitrator merely incorporated the Sanctions Award into the Final Award, treating them as almost entirely separate proceedings before him. (Dkt. 1-15 at 64-70).

Because the Sanctions Award decided allegations and issues entirely separate from the Fee Dispute submitted to arbitration, the Arbitrator exceeded his jurisdiction, both under the FAA and the JAMS Rules. Arbitrators are not authorized to dispense their own brand of justice, nor may they assert inherent authority to address issues outside the scope of the parties' arbitration agreement.[4] *See Eletson Holdings, Inc. v. Levona Holdings Ltd.*, 731 F. Supp. 3d 531, 578

---

[4] In the Sanctions Award, the Arbitrator invoked something akin to a Court's inherent contempt authority by concluding that Perles and Fay were wrongfully trying to undermine his jurisdiction.

16

(S.D.N.Y. 2024) (noting that an arbitrator exceeds his powers where he "effectively dispenses his own brand of ... justice"); *Interchem Asia 2000 PTE Ltd.*, 373 F. Supp. 2d at 359. But that is precisely what Arbitrator did with the Sanctions Award, and as a result, it should be vacated in its entirety.

### ii. *Even if the Sanctions Award was within the scope of the parties' Arbitration Agreement, the Arbitrator violated JAMS Rule 29*.

Even if the Sanctions Award fell within the scope of the parties' Arbitration Agreement, the Arbitrator still exceeded his authority under JAMS Rule 29. JAMS Rule 29 expressly requires sanctions to be based on the "failure of a Party to comply with its obligations under any of these Rules or with an order of the Arbitrator." This rule is sensible, as sanctions are generally intended to only address the culpable party's actions. *See Republic of the Phil. v. Westinghouse Elec. Corp.*, 43 F.3d 65, 74 (3d Cir. 1994) (vacating lower court's sanctions award and emphasizing that "[a] district court must ensure that there is an adequate factual predicate for flexing its substantial muscle under its inherent powers …. If an attorney, rather than a client, is at fault, the sanction should ordinarily target the culpable attorney.").

Despite JAMS Rule 29's express requirements, Rothenberg never showed that Perles failed to comply with Procedural Order 7 or any other order. In the Interim Award, the Arbitrator justified the scope of his sanctions by claiming that in Procedural Order 8, he had enjoined Perles and Fay from "communicating any adverse information about the Claimant to any of the Peterson plaintiffs or their counsel until the Final Award is issued in this arbitration." (Dkt. 1-12 at 5). But no such prohibition was included in any procedural order. When Perles pointed out this consequential error in his motion to reconsider the Interim Award (*see* Dkt. 1-13 at 4-5), the Arbitrator merely removed

---

(Dkt. 1-14 at 17-18). But the Arbitrator was limited to the parties' Arbitration Agreement which did not provide for the adjudication of an ancillary conflict between the parties.

that language, clarified that he was sanctioning them for a failure to disclose communications with *Peterson* plaintiffs in violation of Procedural Order 7, and left the same draconian sanctions in place. (*Compare* Dkt. 1-12 at 5, *with* Dkt. 14 at 5). Even so, the sole basis for the Sanctions Award presented by Rothenberg was three undisclosed emails all sent by Fay, ***not Perles***. No other evidence even suggested that Perles had any communications with *Peterson* plaintiffs that he failed to disclose.

The Arbitrator repeatedly disregarded this lack of evidence against Perles and continually shifted his basis for the sanction. When Perles opposed Rothenberg's motion on the grounds that Rothenberg had not presented evidence that he violated any order, the Arbitrator shifted the inquiry, finding that Perles "never disclaim[ed]" Fay's communications, or "indicate[d] that she was acting clandestinely without his knowledge or even his consent or support." (*See* Dkt. 1-12 at 10, n. 1). Then, when Perles submitted an affidavit in connection with his motion to reconsider in which he denied any knowledge of Fay's communications with *Peterson* plaintiffs (*see* Dkt. 1-13 ¶¶ 4-6), the Arbitrator denied Perles' motion on the sole grounds that Perles should have submitted this evidence earlier, even though Rothenberg had never submitted any evidence that Perles had to rebut (*see* Dkt. 1 ¶ 139). Thus, the Arbitrator repeatedly shifted the burden of proof (and his inquiry) to reverse-engineer Perles' responsibility for Fay's nondisclosure.

Moreover, an adverse inference is a form of sanction granted in response to the violation of an order, not a basis for implying that an order was violated. The circularity of the Arbitrator's "adverse inference" that Perles and Fay attempted to "undermine" his jurisdiction (*see* Dkt. 1-12 at 22) without any showing that Perles violated an order was wrong. Not only did the Arbitrator disregard evidence and sanction Perles for Fay's actions, but he exceeded his authority under JAMS Rule 29, which required any sanctions against Perles to be based on his "failure … to

18

comply with … an order of the Arbitrator." The Arbitrator's inference that Perles and Fay were trying to steal Rothenberg's fees, contradicted by Perles' evidence that he and Fay actively sought to avoid being enriched by Rothenberg's termination (*see* Dkt. 1-13 at 16-17), was both the basis for and a result of the sanction. It is perhaps axiomatic that cause cannot precede effect; regardless, the Arbitrator lacked authority to invent "proof" in the form of an inference that Perles had violated an order.

### iii.     The Arbitrator exceeded his authority by issuing a draconian sanctions award.

Finally, the Sanctions Award also exceeded the Arbitrator's authority under JAMS Rule 29 because it is grossly disproportionate and draconian. JAMS Rule 29 requires any sanction ordered by an arbitrator to be "appropriate," indicating that a sanction should not be arbitrary and capricious, nor grossly disproportionate to the non-compliance at issue. Courts recognize similar limits on their abilities to sanction parties. *See Bulkmatic Transp. Co. v. Pappas*, 2002 U.S. Dist. LEXIS 8360 at \*8 (S.D.N.Y. May 9, 2002) ("Generally speaking, sanctions should be proportional to the gravity of the offense in order to preserve their deterrent effect. Neither should they be overused, used to sanction conduct that is not inherently culpable, or invoked when other solutions are available.").

Here, however, the Sanctions Award was not "appropriate" at all. Even if Fay failed to disclose certain communications with *Peterson* plaintiffs to Rothenberg, the Sanctions Award was neither tailored nor proportional to remedy Fay's nondisclosure. Needless to say, the failure to disclose three (or more) emails does not justify an indefinite award worth tens of millions of dollars.

Given the wide gulf between the nature of Fay's violation and the remedy, it is plain that the Arbitrator believed that but for those undisclosed communications by Fay, *Peterson* plaintiffs

19

would not have terminated Rothenberg and Rothenberg would have suffered no diminution in fees. However, not only was this issue outside the scope of the Arbitration Agreement (*see supra* § I.A.i), but this basis for the Sanctions Award was pure speculation. Fay and Perles were not prohibited from communicating with *Peterson* plaintiffs, and Rothenberg did not present any causation evidence establishing that (i) Fay's failure to disclose certain communications were tied to any *Peterson* plaintiff's decision to discharge Rothenberg as their attorney, or (ii) had the communications been disclosed by Fay, he would have taken action that would have prevented his being terminated. Furthermore, Rothenberg did have effective notice of Fay's communications with the clients in regards to the April 16 Letter insofar as (1) Rothenberg was copied on some of them, and (2) the clients were communicating their displeasure to him. This notice is what prompted Rothenberg's motion for sanctions. (Dkt. 1 ¶ 105).

Rothenberg never informed the Arbitrator (or Perles and Fay) of which *Peterson* plaintiffs had terminated him, or whether he in turn responded by trying to alter their decision. However, since his May 28, 2024 letter exhorting the clients to "reserve judgment until receiving [his] response" to the letter from Perles and Fay, "which may or may not come before the arbitration is resolved," Rothenberg never sent the promised follow up. Given Rothenberg's unwillingness or inability to explain his conduct in 18 months, it is unimaginable that a few days of notice from Fay would have prevented the clients from terminating Rothenberg. Accordingly, the Arbitrator had no evidentiary basis to believe that Fay's failure to disclose certain communications caused Rothenberg any harm whatsoever.

The Arbitrator's assumption that Fay's undisclosed communications harmed Rothenberg was further flawed because the Arbitrator was aware that Fay, Perles, and Rothenberg had all been in contact with *Peterson* plaintiffs since the April 16 Letter. The Arbitrator may have considered

20

all these communications with *Peterson* plaintiffs distasteful, but they were never prohibited by any of his orders and he could not sanction them in hindsight.

Moreover, the Arbitrator ignored that the April 16 Letter was sent upon the advice of ethics counsel. (*See* Dkt. 1-12 at 22). *Peterson* plaintiffs had a right to know that (i) Rothenberg was making claims that called into question his ability to zealously represent *Peterson* plaintiffs, and (ii) Rothenberg believed that his clients had no right to enter into settlements and sharing agreements that would benefit them but reduce his fees. (*Id.*). The April 16 Letter was factual, truthful and necessary to provide the clients with material information, consistent with attorney ethical rules.

Moreover, the Arbitrator ignored that the April 16 Letter was sent upon the advice of ethics counsel. (*See* Dkt. 1-12 at 22). *Peterson* plaintiffs had a right to know that in the course of the Arbitration, Perles and Fay learned that (i) Rothenberg was making claims that called into question his ability to zealously represent *Peterson* plaintiffs, (ii) Rothenberg believed that his clients had no right to enter into settlements and sharing agreements that would benefit them but reduce his fees, and (iii) Rothenberg had effectively withdrawn from his representation of them by erecting a so-called "Chinese wall." (*Id.*). Perles' and Fay' letter was factual, truthful and necessary to provide the clients with material information, consistent with attorney ethical rules.

All told, the Arbitrator failed to fashion an "appropriate" and proportional sanction. Instead, the Arbitrator, apparently incensed by Fay's nondisclosure, baselessly concluded that three undisclosed communications from Fay were part of a larger conspiracy to "steal" Rothenberg's fees, and awarded Rothenberg a windfall. The result was a Sanctions Award that is grossly disproportionate and draconian, worth millions more than even Rothenberg's underlying claims. Tellingly, the Arbitrator refused to reconsider his Sanctions Award even after (i) he was

21

corrected that none of his orders enjoined Perles and Fay from communicating with *Peterson* plaintiffs, (ii) Perles submitted evidence that he had not violated the Arbitrator's order, and (iii) Perles submitted evidence he and Fay had actively sought to *avoid* enriching themselves in the event that *Peterson* plaintiffs terminated Rothenberg. Accordingly, the Sanctions Award was not "appropriate," and the Arbitrator exceeded his authority under JAMS Rule 29.

Because the Arbitrator exceeded his authority under the FAA and the JAMS Rules in numerous ways, the Sanctions Award should be vacated in its entirety.[5]

## II.    THE FINAL AWARD SHOULD BE VACATED

The Final Award should be vacated in its entirety. In it, the Arbitrator ruled in Rothenberg's favor on a claim for unjust enrichment which was neither contemplated by the Arbitration Agreement nor raised in the Demand. The Arbitrator also failed to abide by well-defined principles of law in ruling on Rothenberg's unjust enrichment claim and ignoring Perles' unclean hands defense. Because the Final Award manifestly disregarded the law and decided issues outside the scope of the Arbitration Agreement, it exceeded the Arbitrator's authority.

---

[5] The Sanctions Award should also be vacated because its enforcement would violate two important points of public policy. *See Schwartz v. Merrill Lynch & Co.,* 665 F.3d 444, 452 (2d Cir. 2011) (explaining the Court may vacate an arbitration award where its enforcement would violate a "well defined and dominant" public policy); *see also Newsday, Inc. v. Long Island Typographical Union*, 915 F.2d 840, 845 (2d Cir. 1990) (affirming vacatur of arbitration award that violated public policy). *First*, by directing that certain of the *Peterson* plaintiffs' attorneys' fees be paid to Rothenberg instead of Perles and Fay, the Arbitrator denied *Peterson* plaintiffs the ability to choose their attorneys and consent to how their fees are split. The governing Rules of Professional Conduct require clients to consent to how such fees are shared, which the Sanctions Award disregarded. *See* D.C. Rule of Professional Conduct Rule 1.5(e); 22 NYCRR 1200.0, Rule 1.5(g). *Second*, the Arbitrator erroneously disregarded Second Circuit law in which arbitration awards have been vacated for awarding punitive damages. *See N.Y. Stock Exch. Arb. v. Shearson Lehman Hutton Inc.*, 948 F.2d 117, 122 (2d Cir. 1991); *Fahnestock & Co.*, 935 F.2d at 519. Although not styled as punitive damages, the Arbitrator clearly sought to punish Perles and Fay for what he perceived as improper conduct.

22

### A.    The Final Award exceeded the Arbitrator's authority under 9 U.S.C. § 10(a)(4).

Here, the Arbitrator's authority to issue an award was explicitly limited by the parties' Arbitration Agreement. As made clear by the claims that Rothenberg submitted to Arbitration in his Demand—which the Arbitrator expressly recognized as defining the Arbitration's scope in Procedural Order 2—the "Fee Dispute" contemplated by the Arbitration Agreement concerned only the dilution of Rothenberg's attorneys' fees in *Peterson* caused by the Sharing Agreements.

The Final Award, however, ignored these clear limits. The Arbitrator ruled in Rothenberg's favor on the basis of an unpled "second branch" of Rothenberg's unjust enrichment claim, supposedly concerning Perles' and Fay's "negotiating fees for themselves in the Indirect Follow-On Cases." (Dkt. 1-15 at 43). The Arbitrator analogized that because Perles and Fay "used the 'work product' from the *Peterson* action to obtain judgments," Rothenberg was entitled to compensation as one-third of that work product belonged to Rothenberg by virtue of his contributions to the *Peterson* action. (*Id.* at 46-47). But this claim was not included anywhere in Rothenberg's Demand, and it rested on new allegations "that the Respondents negotiated fees for themselves in the Indirect Follow-On Cases to the exclusion of the Claimant." (*Id.* at 46)*.* In fact, the Demand makes no mention at all of Rothenberg's entitlement to Perles' and Fay's attorneys' fees resulting from the use of "work product" derived from the *Peterson* action. Thus, rather than limiting the Arbitration to the claims in Rothenberg's Demand—as he did in Procedural Order 2— the Arbitrator ruled in Rothenberg's favor on a new, invented theory of liability.[6]

---

[6] Perles sued the Follow-On Attorneys to recover additional fees that they collected, having contributed nothing to *Peterson*. (*Id.* at 10 n. 8). Rothenberg had every opportunity to litigate his entitlement to fees for the Follow-On Attorneys' use of *Peterson* work product, just as Perles had. Instead, Rothenberg raised the issue as a new claim in the midst of arbitrating a completely separate Fee Dispute concerning the Co-Counsel Agreement, which did not give him any rights to fees from cases based on *Peterson* (and in fact deliberately eliminated such a right).

The Arbitrator's decision to exceed the scope of the Arbitration (that he himself had set out on multiple occasions) to rule in Rothenberg's favor was all the more baffling given the Arbitrator's findings. In the Final Award, the Arbitrator explicitly recognized that Rothenberg's new theory of unjust enrichment had nothing to do with the arbitrable claims alleged in the Demand. (*Compare* Dkt. 1-7 ¶ 34 ("By entering into the Follow-On Agreement, Respondents took action that substantially reduced Rothenberg's attorneys' fees under the Co-Counsel Agreement."), *with* Dkt. 1-15 at 47 ("The November 27, 2007, Co-Counsel Agreement had nothing to do with the use of the Peterson work product and did not touch on it whatsoever.")). The Arbitrator also concluded that (i) Perles and Fay had rejected Rothenberg's proposal to share in fees from new cases in their Co-Counsel Agreement (*see* Dkt. 1-2; *see also* Dkt. 1-15 at 36), (ii) Perles' and Fay's actions did not breach the Co-Counsel Agreement (Dkt. 1-15 at 42), and (iii) the Co-Counsel Agreement precluded Rothenberg's unjust enrichment claim, which was plead in the alternative to breach (*id.* at 43). All of these findings precluded Rothenberg from recovering on any of his asserted claims concerning the arbitrable Fee Dispute. As a result, the Arbitrator ruled on a separate, newly raised fee dispute that was not properly before him. Seeking to "dispense his own brand of industrial justice," the Arbitrator remedied what he apparently felt was an unjust outcome for Rothenberg by determining that he was entitled to compensation in connection with an unjust enrichment claim which was outside the scope of the Arbitration. *See Stolt-Nielsen S.A.*, 559 U.S. 662 (2010).

Because the Arbitrator wrongfully exceeded his authority by ruling in Rothenberg's favor on an unpled theory of unjust enrichment which was not contemplated by the Arbitration Agreement or asserted in the Demand, the Final Award should be vacated. *See Melun Indus., Inc. & Strange*, 898 F. Supp. at 992; *see also Subway Int'l, B.V. v. Subway Russ. Franchising Co., LLC,*

24

2021 U.S. Dist. LEXIS 235335, at *12 (S.D.N.Y. Dec. 8, 2021) (vacating award which decided a claim that was not presented by the parties); *KX Reinsurance Co. v. Gen. Reinsurance Corp.*, 2008 U.S. Dist. LEXIS 92717, at *17 (S.D.N.Y. Nov. 14, 2008) (describing claims that "respondents had not submitted … in the arbitration demands" as "outside the parameters of the [arbitration] Panel's authority").

**B.      The Arbitrator Manifestly Disregarded the Law in Issuing the Final Award.**

In issuing the Final Award, the Arbitrator also manifestly disregarded well-defined, explicit, and clearly applicable legal principles in at least two regards.

*i.      The Final Award manifestly disregarded the law on unjust enrichment*.

Under New York law, a party is unable to recover under theory of unjust enrichment when a contract governs the parties' relationship. *Beth Isr. Med. Ctr. v. Horizon Blue Cross & Blue Shield of N.J., Inc.*, 448 F.3d 573, 586-87 (2d Cir. 2006). Because the theory of unjust enrichment lies as a quasi-contract claim, "[i]t is an obligation the law creates *in the absence of any agreement.*" *Id.* (citing *Goldman v. Metro. Life Ins. Co.*, 5 N.Y.3d 561, 572 (2005)) (emphasis in original).

Here, the Arbitrator concluded that Perles, Fay, and Rothenberg had entered into a valid contract when they signed the Co-Counsel Agreement, pursuant to which the parties agreed to share equally in the attorneys' fees earned in the *Peterson* action. (Dkt. 1-15 at 35-38). Perles and Fay specifically "crossed out the paragraph referencing the obligation to provide one another with the right to handle jointly any claims that came their way in the future." (*Id.* at 33-34). Rothenberg agreed to this modified form of the Co-Counsel Agreement, and the Arbitrator found that his decision to "stand down on this request" for a share of the attorneys' fees from new cases constituted part of the consideration sufficient to support the Co-Counsel Agreement. (*Id.* at 36-37

Concluding that the scope of the Co-Counsel Agreement did not cover the issue of Rothenberg's entitlement to fees from the Follow-On Cases (*id.* at 46-47), the Arbitrator held that the existence of the Co-Counsel Agreement did not bar this "branch" of Rothenberg's unjust enrichment claim. (*Id.*). But the parties specifically bargained to exclude Rothenberg's entitlement to attorneys' fees from Follow-On Cases in the Co-Counsel Agreement. (*Id*. at 33-34). This "forbearance of his claimed right to attorneys' fees in the Direct Follow-On cases," which formed the very consideration to support the contract, was clearly within the scope of the Co-Counsel Agreement. *See BLT Rest. Grp. LLC v. Tourondel,* 2011 U.S. Dist. LEXIS 81348, at *19 (S.D.N.Y. July 19, 2011) ("To the extent that Plaintiff believes it was inadequately or not at all compensated for forbearing its rights, a claim for unjust enrichment is not cognizable because a valid contract already controls its entitlements.").

Therefore, the Arbitrator manifestly disregarded the law barring unjust enrichment claims where a contract exists. *See Beth Isr. Med. Ctr.*, 448 F.3d at 586; *see also G & G Invs., Inc. v. Revlon Consumer Prods. Corp.*, 283 A.D.2d 253, 253 (1st Dep't 2001) ("Since a valid contract exists governing the subject matter in dispute, the cause of action for unjust enrichment is untenable.").

### ii.    *The Final Award manifestly disregarded the law on unclean hands*.

In response to the Demand, Perles asserted unclean hands as an affirmative defense against Rothenberg's claim for equitable relief based on his numerous acts of misconduct during the Clearstream Asset collection effort, which diluted *Peterson* plaintiffs' recovery and attorneys' fees to which Perles and Fay were entitled, to Rothenberg's own benefit. (*See* Dkt. 1 ¶ 186). Specifically, Rothenberg represented plaintiffs in four other separate actions against Iran (the Rothenberg Intervenors). (*See id*. ¶ 187). Instead of entering his appearance as counsel in these cases, Rothenberg hired Stroock to act as trial counsel, which obtained judgments in each of the

26

cases and undertook collection on them by intervening in the Turnover Action. (*See id.*). That intervention threatened the ability of the *Peterson* plaintiffs and Follow-On plaintiffs to recover, and forced them to agree to share their award with the Rothenberg Intervenors through the Litigation Cooperation and Settlement Agreement. (*See id*. ¶ 188). This reduced the recovery of Rothenberg's *Peterson* clients and also resulted in additional fees paid to Rothenberg and less to Perles and Fay. (*See id.* ¶ 189).

The Arbitrator failed to address whatsoever Perles' arguments that Stroock, which also represented Rothenberg personally, threatened *Peterson* plaintiffs' recovery of the Clearstream Assets by its intervention in the Turnover Action. Such misconduct has only continued as earlier this year, Stroock negotiated provisions antagonistic to *Peterson* plaintiffs into the settlement of a separate case before this Court (captioned *In re: 650 Fifth Avenue and Related Properties*, 1:08-cv-10934), which has the potential to cost them hundreds of millions of dollars in favor of parties that Rothenberg represents in other, unrelated actions against Iran. (*See* Dkt. 1-12 at 10-11). Rothenberg's connection with Stroock concerning its efforts to challenge *Peterson* plaintiffs' entitlement to any of the Clearstream Asset in favor of his other clients is precisely the sort of wrongful conduct that should bar him from relying on unjust enrichment to recover from Perles and Fay. *See Sorenson v. Winston & Strawn, LLP,* 162 A.D.3d 593, 593 (1st Dep't 2018) (affirming dismissal of unjust enrichment claim based on plaintiff's unclean hands in rendering legal services pursuant to an improper contingency fee retainer); *Cohn & Berk v. Rothman-Goodman Mgmt. Corp.*, 125 A.D.2d 435, 436 (2d Dep't 1986) (barring plaintiff "from seeking the equitable remedy of recovering moneys obtained through unjust enrichment by the doctrine of unclean hands"); *see also Radiancy, Inc. v. Viatek Consumer Prods. Grp.*, 138 F. Supp. 3d 303,

319 (S.D.N.Y. 2014) (denying motion to strike unclean hands defense where plaintiff was "engaging in the same conduct of which it [w]as accusing [defendant]").[7]

## CONCLUSION

For the foregoing reasons, Petitioners respectfully request that the Court enter an Order Vacating the Final Award, including the Sanctions Award incorporated therein, and denying Rothenberg's Cross-Petition to confirm the Final Award, together with such other and further relief as the Court shall deem just and proper.

Dated: New York, New York
       November 25, 2025

MORRISON COHEN LLP

By:   */s/ Danielle C. Lesser*
      Danielle C. Lesser
      Edward P. Gilbert
      909 Third Avenue
      New York, NY 10022
      (212) 735-8600
      dlesser@morrisoncohen.com
      egilbert@morrisoncohen.com

*Attorneys for Steven R. Perles, Esq.*
*and Perles Law Firm, P.C.*

---

[7] The Final Award should also be vacated because its enforcement would violate public policy concerning fee sharing arrangements. *See Schwartz*, 665 F.3d at 452; *see also Pichardo v. Koenig*, 2018 NY Slip Op 51839(U), ¶ 1 (1st Dep't 2018) ("As a matter of public policy, courts pay particular attention to the fee arrangement between attorneys and their clients …."). Here, the Arbitrator awarded Rothenberg as damages "21.61% of the attorneys' fees from the Indirect Follow-On Cases from past and future recoveries in those cases." (Dkt. 1-15 at 62, n. 34). However, the plaintiffs in the Indirect Follow-On Cases never hired Rothenberg, they did not consent to him receiving attorneys' fees in connection with their actions, and they never even benefited from his limited work as part of the *Peterson* action. (*See* Dkt. 1 ¶ 178). Perles and Fay contributed more than a decade of onerous work and leadership that resulted in the liability decision and all the subsequent enforcement proceedings, which assisted the plaintiffs in the Indirect Follow-On Cases in procuring judgments against Iran and helping them enforce those judgments. (*See id.*). By contrast, Rothenberg's only involvement was locating and referring a portion of the Peterson plaintiffs. Thus, the Arbitrator's Final Award violates the public policy enshrined in the rules of professional conduct concerning the division of legal fees. *See* D.C. Rule of Professional Conduct Rule 1.5(e); 22 NYCRR 1200.0, Rule 1.5(g).

## WORD COUNT CERTIFICATION

Pursuant to Local Civil Rule 7.1 of this Court, I hereby certify that the total number of words in this Memorandum of Law, excluding the caption, table of contents, table of authorities, signature block, and word count certification is 8,965 in accordance with the word limit set by this Court in its Order Regarding the Consolidation of Proceedings and Briefing Schedule dated November 13, 2025 in this action.

*/s/ Danielle C. Lesser*
Danielle C. Lesser

29