# Exhibit 1

**ARBITRATION PROCEEDING BEFORE JAMS**

| | | |
|---|---|---|
| ALLEN L. ROTHENBERG, Esq., *et al.* | * | |
| Claimants | * | |
| v. | * | JAMS Ref. No.: 1425036110 |
| | | Hon. Stephen Crane, Arbitrator |
| THOMAS FORTUNE FAY, Esq., *et al.* | * | |
| Respondents | * | |

**OPPOSITION TO CLAIMANTS' MOTION FOR SANCTIONS
OR, IN THE ALTERNATIVE, TO AMEND DEMAND**

Respondents, Steven R. Perles and Perles Law Firm, P.C. (hereinafter sometimes referred to collectively as the "Perles Respondents"), by and through undersigned counsel, hereby oppose Claimants' Motion for Sanctions or, In the Alternative, to Amend Demand ("Motion"). The Motion must be denied in its entirety for the reasons explained in detail herein.

## I.    INTRODUCTION

The record in this Arbitration is closed and has been since January 24, 2025. According to Rule 22(h) of the JAMS Comprehensive Arbitration Rules and Procedures, "[i]f post-Hearing briefs are to be submitted or closing arguments are to be made, the Hearing shall be deemed closed upon receipt by the Arbitrator of such briefs or at the conclusion of such closing arguments, whichever is later." The final post-Hearing briefs were submitted on January 24, and the Hearing has been closed since that date.

Claimants are seeking to re-open the Hearing to amend the Demand for Arbitration that was filed on September 14, 2021 – more than three and a half years ago. Not only are Claimants seeking to re-open the Hearing **and** making new claims for relief – claims entirely outside the scope of the Demand for Arbitration and Arbitration Agreement – Claimants are also seeking an

award for speculative damages that Claimants have not yet – and might never – suffer. There is no reason for the Arbitrator to indulge Claimants' new complaints.

While the Motion presents new complaints and a new cause of action, Claimants' message is familiar. Claimants miscast Respondents as acting clandestinely in an effort to make an "end run" around this Arbitration. This narrative is unsupported by evidence. The communications from Ms. Fay attached to the Motion are neither clandestine (Mr. Rothenberg was copied, and Ms. Fay encouraged the clients to contact Mr. Rothenberg), nor do they show Respondents attempting an "end run" around the Arbitration. The Arbitrator can continue his deliberations on the claims presented based on the evidence introduced during the Hearing. To the extent Claimants feel that they have new claims against Respondents based on Ms. Fay's communications in 2024 and 2025 with **her clients**, they are free to pursue whatever legal remedies they think they have – outside this Arbitration.

## II.    ARGUMENT

### A. Claimants are making new claims well outside the scope of the Demand for Arbitration, and the request to amend the demand should be rejected.

The Demand for Arbitration contains three causes of action. While the Arbitrator is thoroughly familiar with those causes of action, it is worth reviewing them to illustrate that the claims made in the Motion are entirely new. In Count I, Claimants allege that Respondents breached the covenant of good faith and fair dealing "by agreeing on behalf of the Peterson Plaintiffs and the Follow-On Plaintiffs to a sharing agreement that significantly increased their attorneys' fees at Rothenberg's expense." Demand, ¶ 39. In Count II, Claimants seek a declaratory judgment setting forth Mr. Rothenberg's entitlement to future attorneys' fees "sufficient to remedy the dilution" caused by Respondents' agreeing to the aforementioned sharing agreement. Id., ¶ 45.

In Count III, Claimants alternatively argue that Respondents have been unjustly enriched as a result of the aforementioned sharing agreement. Id., ¶ 47.

The Demand for Arbitration says **nothing** about Respondents' communications with their clients, which the Motion impermissibly seeks to restrict. As the Arbitrator recognized when Claimants aired their grievances via email on March 11, Claimants' application requires a formal motion to amend. Pursuant to Rule 10 of the JAMS Comprehensive Arbitration Rules and Procedures, "[a]fter the Arbitrator is appointed, no new or different claim may be submitted, except with the Arbitrator's approval." The Arbitrator was appointed on September 30, 2021. Claimants should not be permitted to amend their claim now, two months after the Hearing is closed. *See Grand Light & Supply Co. v. Honeywell, Inc.*, 771 F.2d 672, 680 (2d Cir. 1985) (holding that the trial court abused its discretion in permitting plaintiff to amend its complaint after trial without allowing defendants the opportunity to present additional evidence).

Moreover, even if the Arbitrator were inclined to permit an amendment, the Motion does not allege a sufficient basis for the relief requested. Claimants are essentially asking the Arbitrator to enter an award on an unstated, unproven claim for tortious interference with contract. Their request should be summarily rejected. Alternatively, if an amendment is permitted, Respondents must be given an opportunity to file a responsive pleading and to present evidence in opposition to the new claim.

### B. The Motion makes claims that fall outside the scope of the Arbitration Agreement.

In addition to the fact that the Motion seeks relief that is not contained within the Demand for Arbitration, the Motion seeks relief based on claims that fall outside the scope of the Arbitration Agreement. Put another way, the Arbitrator lacks jurisdiction over these newly asserted claims. The Arbitration Agreement provides that Claimants and Respondents would submit the "Fee

3

Dispute" to arbitration. The Fee Dispute is defined as "whether Rothenberg is entitled to compensation from Fay and Perles caused by and/or related to sharing agreements between the plaintiffs and/or their attorneys in the Beirut Marine Cases…and Marine victim and family plaintiffs (not represented by Rothenberg) and/or their attorneys in other actions against the Islamic Republic of Iran." Simply put, the Arbitration Agreement governs Mr. Rothenberg's fee dilution claim. This Arbitration does not have universal jurisdiction over any and every dispute between Rothenberg, Fay and Perles. It is certainly not the venue to resolve disputes between Mr. Rothenberg and his clients.[1]

Claimants tacitly acknowledge that this is not the proper forum for this dispute. In ¶ 15 of the Motion, Claimants suggest that Respondents are engaged in "an obvious attempt to identify the clients that have purportedly terminated Claimant's representation so that Respondents **can challenge** Mr. Rothenberg's entitlement to fees from the client side in the **relevant forum**, whether in connection with the pending settlement in the 650 Fifth Avenue Action or the disbursement of funds from the USVSST" (emphasis added). This paragraph is instructive for two reasons. First, Claimants are acknowledging that the harm they are concerned about has not even occurred yet. Claimants are concerned that Mr. Rothenberg's fees will later be challenged by his former clients. Implicit is the fact that the challenge has not occurred yet. Second, to the extent such a challenge occurs, it would be in another forum.[2] For those two reasons, the Arbitrator cannot award Claimants any relief.

---

[1] Mr. Rothenberg is asking the Arbitrator to order that Respondents reimburse him for any money he loses because his clients fired him for his unethical conduct. Effectively, he is asking the Arbitrator to order that Respondents act as Mr. Rothenberg's *de facto* malpractice insurance.

[2] Specifically, to the extent that Ms. Fay is attempting to identify the clients that have terminated Mr. Rothenberg, Ms. Fay is ethically and legally required to obtain this information. At the very least, Epiq, the entity administering the distributions from the 650 Fifth Avenue Action and USVSST, must know what counsel represents what claimants in order to make distributions. If Mr. Rothenberg feels he is entitled to a particular quantum of fees, the remedy is not to conceal his termination, but to disclose it and assert a lien before the appropriate tribunal.

### C. Claimants' requested relief would inappropriately infringe on the attorney-client relationship.

Claimants' request for relief includes four branches (b, c, d, and e) which would infringe on the Respondents' ethical obligation to communicate with their clients. Rule 1.4 of the D.C. Rules of Professional Conduct provides that:

> (a) A lawyer shall keep a client reasonably informed about the status of a matter and promptly comply with reasonable requests for information.
> (b) A lawyer shall explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation.

This ethical obligation required the Respondents to send the April 16, 2024 letter to their clients.[3] While Claimants consistently refer to this letter, and subsequent communications with the clients, as an "end run" around this Arbitration, the communications with clients were made in accordance with Respondents' ethical obligations and in consultation with ethics counsel. The Respondents' ethical obligations and duties to their clients supersede Claimants' belief that they may later suffer damages as a result. If anything, Claimants are attempting an "end run" around having to face Mr. Rothenberg's clients and explaining why Claimants should still be paid even though Mr. Rothenberg stopped working for them when he created a "Chinese wall" in 2010 and has been working **against** their interests in the interim. Although Claimants continue to use the phrase "end run," Ms. Fay's communications with **her** clients are necessary client communications, and they do not require the Arbitrator to reopen the Hearing. The Arbitrator should continue his deliberations based on the evidence in the record.

---

[3] As a precaution, the Perles Respondents sought advice from independent ethics counsel, who confirmed the conclusion that the ethics rules required Respondents to make the disclosures that they did to their collective clients.

**D. Claimants have not articulated any damages suffered as a result of the conduct of which they complain.**

Claimants never articulate how Ms. Fay's communications to her clients have caused Claimants any harm. To the contrary, Claimants argue that Mr. Rothenberg "long ago completed the work that comprised his agreed-upon role in the case" and argue that Ms. Fay's communications to her clients are "futile." That is, Mr. Rothenberg does not believe that his being fired now, in 2025, will preclude him from receiving his fee. Mr. Rothenberg has not suffered any damages to date and based on the Motion, appears confident that he will not suffer damages later. The lack of any damages is made clear in branch (a) of the requested relief, which asks the Arbitrator for an order "sanctioning Respondents in an amount equal to **any diminution** in Claimant's ultimate recovery of legal fees due to any purported termination of his representation by any Peterson Plaintiff" (emphasis added). There has been no diminution, and Claimants' suggestion that Mr. Rothenberg's termination will be futile suggests he does not believe it will ever result in diminution. That being the case, the Arbitrator does not need to take the extraordinary step of reopening the Hearing, to allow new claims to be made, more than three years after the Demand for Arbitration was filed.

Without providing specifics in the Motion itself, Claimants' suggestion that he long ago completed his work refers to Claimants' argument that Mr. Rothenberg's agreed-upon role was to locate and sign up Plaintiffs, and that the approximately $60 million he has already received was compensation for that work. Of course, Claimants are forced to take the position that Mr. Rothenberg's work was completed by 2010, as Mr. Rothenberg testified that he erected a "Chinese

wall" which prevented him from performing any work on the *Peterson* Plaintiffs' behalf after 2010.

### E. The Perles Respondents are not in violation of Order No. 7 and sanctions are not appropriate or justified.

Claimants' Motion refers only to emails sent by Ms. Fay to various *Peterson* Plaintiffs. None of the attached exhibits contain any communications from Mr. Perles or any member of the Perles Law Firm. Neither Mr. Perles, nor any other member of the Perles Law Firm, has communicated with any of Mr. Rothenberg's clients about the subject of the April 16, 2024 letter. While Mr. Perles and the Perles Law Firm contend that Ms. Fay's communications to her (and the Perles Law Firm's) clients do not entitle Claimants to any relief, to the extent the Arbitrator disagrees, the Perles Respondents cannot be sanctioned.

Moreover, even if sanctions were warranted (they are not), the relief requested in the Motion goes well beyond sanctions. Rule 29 of the JAMS Comprehensive Arbitration Rules and Procedures provides sanctions that may be available for violation of an order. Potential sanctions include assessments of fees or costs, exclusion of evidence, drawing adverse inferences, or in "extreme cases, determining an issue or issues submitted to Arbitration adversely to the Party that has failed to comply." While the sanctions listed in the Rule are not meant to be exhaustive, the sanctions Claimants request go beyond what the Rules contemplate even for "extreme cases." Ms. Fay sending emails to her clients and copying Mr. Rothenberg is not an "extreme case." And yet, Claimants are seeking to add new claims that fall outside the scope of the Arbitration Agreement and want relief for damages that they have not even suffered. Claimants are not requesting sanctions; their request is akin to a default judgment on a brand new claim outside the scope of the Arbitration Agreement. The Arbitrator should deny this request.

7

**F. If the Arbitrator reopens the Hearing, the Perles Respondents must be allowed to introduce new evidence.**

If the Arbitrator reopens the Hearing, the Perles Respondents intend to:

(1) present evidence regarding Claimants' recent actions that were adverse to the *Peterson* Plaintiffs, including: (a) having hundreds of new clients file a new lawsuit pursuing the same Iranian assets that the *Peterson* Plaintiffs are pursuing, and (b) hiring lobbyists that advocate for laws which oppose or reduce the *Peterson* Plaintiffs right to payments from the USVSST; and

(2) present an expert report from Bruce A. Green, director of the Louis Stein Center for Law and Ethics at Fordham Law School, to show that Mr. Rothenberg had an impermissible conflict of interest that he never disclosed to his clients, and that Mr. Rothenberg could not unilaterally cease representing his clients (neither the *Peterson* Plaintiffs nor the GABK clients) without those clients' informed consent. The Arbitrator will recall that Respondents already submitted a December 13, 2024 letter from Professor Green opining that certain communications between Respondents and *Peterson* Plaintiffs could not be disclosed in this Arbitration.

### III.    DIRECT RESPONSES TO CLAIMANTS' REQUESTED RELIEF

The Motion makes seven separate requests for relief. For the sake of clarity, the Perles Respondents' direct responses to those requests are provided below.

> A. Holding Respondents in contempt of Order No. 7 and sanctioning Respondents in an amount equal to any diminution in Claimant's ultimate recovery of legal fees due to any purported termination of his representation by any *Peterson* Plaintiff from whom Claimant received legal fees in *Peterson et al v. Islamic Republic of Iran*, No. 10-4518 (SDNY).

Respondents are not in violation of Order No. 7. First, Respondents have an ethical obligation to communicate with their clients. Second, the Perles Respondents were not involved in the communications Claimants complain of. To the extent sanctions are awarded based on Ms.

Fay's communications with her clients, the sanctions awarded simply cannot approach the sanctions requested here. Claimants' requested sanction in this branch is equivalent to a default judgment on an unpled tortious interference claim. Even if the Arbitrator had jurisdiction over such a claim, which is not at all clear, the Arbitrator could not prejudge that claim on this limited record.

> B. Directing Respondents to cease and desist from facilitating the termination or purported termination of Mr. Rothenberg's representation.

The requested relief is vague, and it is unworkable because it infringes on the attorney-client relationship. Respondents must be permitted to communicate with their clients in accordance with Rule 1.4(a) and (b) of the Rules of Professional Conduct, which provide that:

> (a) A lawyer shall keep a client reasonably informed about the status of a matter and promptly comply with reasonable requests for information.
> (b) A lawyer shall explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation.

The requested relief, if granted, would impede Respondents' ability to communicate with their clients. By way of example, if one of Mr. Perles and Mr. Rothenberg's joint clients followed up with Mr. Perles in response to the April 16, 2024 letter, Mr. Perles would be ethically obligated to explain his belief that Mr. Rothenberg has a conflict of interest that calls into question Mr. Rothenberg's ability to zealously, diligently and competently represent the *Peterson* Plaintiffs. If Mr. Rothenberg believes any such future communications constitute tortious interference, that claim can be litigated in the appropriate forum; it is not now, and has never been, one of the claims to be decided in this Arbitration.

> C. Directing Respondents to comply with Order No. 7 by "provid[ing] the Claimant with information regarding any communications or meetings the Respondents had with the *Peterson* Plaintiffs, who are the Claimant's clients, related to the Claimant, the letter dated April 16, 2024, or the subject of this arbitration," this while also continuing to

9

provide "the Claimant with the same detailed information for any past, present and future communications with the *Peterson* Plaintiffs who are Claimant's clients."

D. Directing Respondents to provide Claimant with all written communications since April 16, 2024 (the date of the first letter) or in the future with any Peterson Plaintiff or such plaintiff's representative that reference or refer to Claimant in any way whatsoever. (In view of Respondents' excessive parsing of the prior orders, this request is intentionally broad so as to capture all communications about Mr. Rothenberg with the *Peterson* Plaintiffs).

In effect, branches C and D are requesting additional discovery to support a claim that has not been made, in an arbitration that has been closed for nearly two months. The request should be denied as improper for that reason. Moreover, as discussed in the December 13, 2024 opinion letter provided by Professor Bruce Green, the Respondents cannot produce attorney-client privileged communications with those clients who have fired Allen Rothenberg. The Arbitrator's Order No. 9 previously denied a similar request for communications with Mr. Rothenberg's former clients. That Order should be upheld and need not be reconsidered. Subject to and without waiving the attorney-client privilege, the Perles Respondents have had no communications or meetings responsive to this request.

E. Directing Respondents to facilitate, and not contest, Claimant's claim to direct payment of Claimant's pro rata share of legal fees from funds paid by the USVSST on account of the same individual *Peterson* Plaintiffs from whom the Claimant received legal fees in the *Peterson et al v. Islamic Republic of Iran*, No. 10-4518 (SDNY).

Payments from the USVSST to the *Peterson* Plaintiffs, and to the attorneys, will be administered by a third-party (Epiq). Epiq is the same third-party administrator that oversaw the distribution of funds from Clearstream I. The Perles Respondents understand that Epiq will provide Confidential Disbursement Authorization Forms (CDAs), similar to those provided when disbursements were made related to Clearstream I. It is clear that many of Mr. Rothenberg's clients

10

have terminated his representation. Whether Mr. Rothenberg is paid by his former clients, and how much, is not a matter that is before the Arbitrator in this Arbitration, and it is not something that the Arbitrator can decide because the *Peterson* Plaintiffs are not parties to this Arbitration. To the extent that this branch of the requested relief would require the Perles Respondents to take a position adverse to their clients' requests, the Perles Respondents cannot agree.

> F. Directing Respondents to escrow legal fees payable to them from funds paid by the USVSST on account of the Indirect Follow On Plaintiffs in an amount sufficient to cover Claimant's claimed damages which will be determined once the details of any such payment are made available to Claimant.

As Perles Respondents have explained to Claimants' counsel repeatedly, there is no sharing agreement in place as to funds from the USVSST. There is no scarce asset to share pro rata and so the application of the Follow On plaintiffs for catch-up payments in no way reduced the payment to any of Mr. Rothenberg's clients. Each recipient receives a fixed percentage of his or her compensatory damages (approximately 16%), offset by whatever he or she received in Clearstream I. That 16% figure comes from the most recent report by the GAO, which sought to approximate what other claimants had received from the USVSST since its inception. Simply put, this **is not a pro rata percentage of a limited asset**; the catch-up payment is actually over-funded and the unused balance will be deposited into the General USVSST Fund.[4] In fact, because the Follow On Plaintiffs participated in the Clearstream I sharing agreement that Claimants' complain of, those Plaintiffs absorbed a portion of the "offset" that the GAO applied to reduce the Beirut Marines

---

[4] U.S. VICTIMS OF STATE SPONSORED TERRORISM FUND, 1983 Beirut Barracks and 1996 Khobar Towers Bombing Claimants Due $614 Million Report to Congressional Committees, November 2024, GAO-25-107564 https://files.gao.gov/reports/GAO-25-107564/index.html?_gl=1*jbxmfg*_ga*MjA4NzMwMzI3NS4xNzMwNDY3MDky*_ga_V393SNS3SR*MTc0Mj U4OTQ3My41LjAuMTc0MjU4OTQ3My4wLjAuMA.. ("We divided the amount of payments from the Fund (i.e., about $1.448 billion) by the non-9/11 victims' net eligible claims offset by qualifying compensation from other sources (i.e., about $9.027 billion) to identify 16.0353 percent." "[A]ll amounts remaining in the reserve fund in excess of proposed lump sum catch-up payments shall be deposited into the Fund.")

payments. This made Mr. Rothenberg's clients' offset, representing payments in Clearstream I in partial satisfaction their judgments, smaller, thereby **increasing** the size of the USVSST payments to Mr. Rothenberg's clients – to his potential benefit.[5] Accordingly, even assuming *arguendo* that Mr. Rothenberg's theory of entitlement to additional fees because his clients entered into a sharing agreement is valid, it is simply not germane to funds from the USVSST. In sum, there is no basis for Respondents to escrow any funds from the USVSST.

G. Permitting the sharing of Order No. 7 and this requested order with anyone necessary to implement the relief in the context of the USVSST.

The Perles Respondents agree to this branch of the requested relief and encourage Claimants to continue their dialogue with Epiq, including a disclosure of those clients that have terminated Mr. Rothenberg, so that the distribution can proceed in an orderly and timely fashion.

IV.    CONCLUSION

For the reasons stated herein, the Motion for Sanctions or, In the Alternative, to Amend Demand should be denied.

Respectfully submitted,

BREGMAN, BERBERT, SCHWARTZ & GILDAY, LLC

By:    /s/ Stephen J. Whelan
       Douglas M. Bregman, Esq.
       Stephen J. Whelan, Esq.
       Geoffrey T. Hervey, Esq.
       7315 Wisconsin Avenue, Suite 800 West
       Bethesda, Maryland 20814
       (301) 656-2707 – telephone
       dbregman@bregmanlaw.com
       swhelan@bregmanlaw.com
       *Counsel for Respondents Steven R. Perles and*
       *Perles Law Firm, P.C.*

---

[5] This raises one of many fundamental problems with Claimants' "dilution" theory. As Respondents continue, against the headwinds of Mr. Rothenberg's misconduct, to march towards full enforcement of the Beirut Marines' judgments, Mr. Rothenberg's questionably actionable dilution will disappear. If the Arbitrator were to order Respondents to pay Claimants a lump sum, Claimants would need to repay Respondents as the judgments were incrementally enforced.

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that a copy of the foregoing paper was served by JAMS Access

and email on all counsel of record in this matter on March 25, 2025.


By:    /s/ Stephen J. Whelan
              Stephen J. Whelan