**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| Thomas Fortune Fay, The Fay Law Group, P.A., Steven R. Perles, Perles Law Firm, P.C., and Fay and Perles FSIA Litigation Partnership,<br><br>Petitioners / Cross-Petition Respondents,<br><br>v.<br><br>Allen L. Rothenberg, The Law Firm of Allen L. Rothenberg, and The Rothenberg Law Firm LLP,<br><br>Respondents / Cross-Petitioners. | Civil Action No. 1:25-cv-7613 (Consolidated Action) |

**ROTHENBERG'S REPLY BRIEF IN OPPOSITION TO PETITIONS TO VACATE AND IN SUPPORT OF HIS CROSS-PETITION TO CONFIRM ARBITRAL AWARD**

Rothenberg submits this reply brief in opposition to the Petitions to Vacate filed by Fay & Perles and in support of his Cross-Petition to Confirm the Award entered by Arbitrator Stephen Crane in the Arbitration.

## I.    INTRODUCTION

Fay & Perles ask this Court to second-guess an experienced, hand-selected arbitrator who presided over a ten-day hearing, made detailed factual findings after thorough argument and briefing, and issued a balanced 84-page reasoned decision that ruled for both sides in part. Under the FAA and Second Circuit precedent, confirmation is mandatory so long as there is at least a "barely colorable justification" for the challenged components—a standard easily satisfied here.

Arbitrator Crane provided ample factual support for his decision and followed the law. After providing Fay & Perles with notice and an opportunity to present their opposition, he appropriately and proportionately sanctioned Fay & Perles for their attempted end-run around the

Arbitration and violation of his directive that they "facilitate and not contest" Rothenberg's fee expectancy from upcoming distributions.[1]  Arbitrators have inherent authority to preserve the meaningfulness of an arbitration and, through that authority and JAMS Rule 29, Arbitrator Crane appropriately protected Rothenberg against harm that may flow after Fay & Perles instead "coaxed" their joint clients to terminate him as the Arbitration approached conclusion.  Arbitrator Crane rejected their excuses as "subterfuge" and this Court should defer to his assessment, although Fay & Perles' smokescreen is obvious even from afar.  Likewise, his unjust enrichment award relating to the Indirect Follow-On Cases was properly pleaded, fully litigated and rests on controlling Second Circuit precedent permitting quasi-contract recovery for exploitation of shared work product beyond the four corners of the parties' Co-Counsel Agreement.  Fay & Perles knowingly conflate the Indirect Follow-On Cases with the Direct Follow-On Cases, a distinction that Arbitrator Crane understood and implemented in the Award.  The damages assessed were within the scope of the arbitrator's jurisdiction and do not constitute an impermissible sharing of fees without client consent—counter-arguments Fay & Perles never presented to the arbitrator and thus waived and, regardless, are without merit.  Importantly, without the compensatory sanctions, the unjust enrichment damages awarded by Arbitrator Crane would have been rendered "academic" by Fay & Perles' self-help.  Finally, the Court should not revisit the arbitrator's determination that Perles "produced no viable evidence" supporting his unclean hands defense— another quintessential factual determination insulated from judicial second-guessing and, tellingly, an argument that Fay does not join.

---

[1] The pattern seems to be repeating with certain Peterson Plaintiffs (represented by the brother of one of Fay's attorneys) having recently filed a purported declaratory judgment class action against Rothenberg seeking to undercut relief contained in the Award—yet another end-run, this time around this Court's jurisdiction to confirm or vacate the Award.  See Banks et al. v. Rothenberg et al., No. 25-3863 (D.D.C.).

The petitions to vacate merely seek a reweighing of evidence and a do-over on legal theories that the arbitrator already rejected (or never even heard). Judicial review of arbitration awards is limited to preserve arbitration's goals of efficiency and finality—objectives especially relevant here in view of the passage of more than eight years since the parties jointly tapped Arbitrator Crane to resolve their differences and considering his careful balancing of the equities. There are no grounds to vacate the Award—clearly so in view of the deference required.

## II.    ARGUMENT

Each of Fay & Perles' challenges to the Award amounts to an impermissible request for this Court to relitigate the merits or substitute its judgment for that of Arbitrator Crane, and each must be rejected.

### A.    The Arbitrator's Compensatory Sanctions Are Grounded In Fact And Law, And Fall Squarely Within His Authority; The Court Should And Must Defer To The Arbitrator.

With his years of experience as a jurist and arbitrator and in-depth history with these parties and issues, Arbitrator Crane was not fooled when Fay & Perles sought to end-run his jurisdiction by weaponizing the clients against Rothenberg. He reviewed the evidence: Fay & Perles' own words in the April 16, 2024 letter and subsequent client communications (including mass client meetings via Zoom). He afforded Fay & Perles an opportunity to defend their actions, including on calls and in writing after Rothenberg filed a motion for sanctions. Although they offered the same "ethics necessity" excuse urged here, Fay & Perles did not deny the words on the page, nor could they. And, after considering that record and the circumstances (the hearings were nearly complete and the case soon to be submitted for decision), Arbitrator Crane rejected Fay & Perles' excuse as "subterfuge"—a forceful rejection from a typically-reserved arbitrator. The Court should and must defer to Arbitrator Crane not only because he was in a better position to evaluate the facts and draw inferences, but also because his concerns ultimately came to fruition. Fay &

Perles' "coaxing" resulted in virtually all the joint clients (over 550 of them) terminating Rothenberg's representation and potentially imperiling fees from upcoming distributions. That threat had the potential to, in his words, render the entire arbitration "academic" and so Arbitrator Crane took remedial action, issuing the compensatory sanctions at issue here on account of Fay & Perles' direct violation of his prior order to "facilitate and not contest" Rothenberg's entitlement to certain fees from upcoming distributions.

1.    The Court should and must defer to Arbitrator Crane's finding that Fay & Perles' "ethics necessity" defense is "subterfuge."

Fay & Perles attempt to repackage their coordinated, targeted client outreach campaign as a non-discretionary ethical duty, but Arbitrator Crane considered that narrative, rejected it as "subterfuge" and found—based on their own contemporaneous communications—that they "coaxed" Peterson clients to discharge Rothenberg to undermine his arbitration claims. The arbitrator's fact-findings were anchored in Fay & Perles' own April 16, 2024 letter and follow-up communications (including mass Zoom meetings) soliciting terminations through "false choice" framing that threatened to render "academic" the arbitral relief sought by Rothenberg. On that record (which Fay & Perles did not dispute or seek to supplement), Arbitrator Crane drew an "adverse inference that [Fay & Perles] are cloaking themselves in the Rules of Professional Conduct to steal the Claimant's fees derived from the plaintiffs he represents in the Peterson Action." See Award at 71. In their petitions, Fay & Perles make the same "ethics necessity" excuse rejected by the arbitrator but offer no avenue for the Court to substitute its judgment for that of Arbitrator Crane. In addition, with respect to Perles' attempt to shift all blame to Fay, Arbitrator Crane found that Perles "never disclaims Respondent Fay's communications or indicates that she was acting clandestinely without his knowledge or even his consent or support." Id. at 70. He pointed out that the "April 16, 2024 letter was sent on Fay & Perles letterhead and [Fay's] follow-up communications clearly were made on behalf of Fay & Perles." Id. These are

all quintessential factual determinations insulated from judicial second-guessing under the FAA. See Wallace v. Buttar, 378 F.3d 182, 193 (2d Cir. 2004) (reviewing court may not revisit determinations of fact made by arbitrator).  The Court should not and must not disturb them.

Indeed, Arbitrator Crane's finding that Fay & Perles only raised concerns with the clients to gain an advantage in the arbitration is an obvious one considering the timing.  As he explained in the Award:

> If the Rules of Professional Conduct imposed an obligation on the Respondents to speak to the clients about any alleged conflicts, those obligations were imposed long ago.  The Respondents chose to remain silent.  The Claimant first raised an issue regarding the Marines Cooperation Agreement and the dilution of his fees when he learned of that Agreement in or about 2017.  The Arbitration Agreement dated December 4, 2017, and signed by all parties to this arbitration, clearly spelled out the issue the Claimant was raising with respect to the sharing agreements.  ***The Respondents remained silent for seven years and only found the urgency to notify the Peterson plaintiffs of the Claimant's alleged ethical violations in the midst of this arbitration.***

See Award at 69-70 (emphasis added).  To be clear, Rothenberg's deposition testimony (in September 2023) that "the clients had no right to reduce [his] fee" was completely consistent with Perles' earlier claims against certain of the Follow-On Attorneys in Perles v. Drennan et al., No. 653886 (N.Y. Sup.), wherein Perles argued: "the fact that the plaintiffs themselves agreed to share the recovery did not mean that the attorneys fees that otherwise would have been paid to [him] were suddenly reallocated to [the Follow-On Attorneys] or to any other attorneys who did minimal work … that was never the intent of the sharing arrangement."  See Perles' Verified Complaint in Perles v. Drennan et al. (Dkt. 11-5).  Considering the symmetry of the arguments, the mischaracterization of Rothenberg's testimony to suggest a nonexistent conflict, the careful censorship of the full facts underlying Rothenberg's claims in the arbitration and the timing of Fay & Perles' gambit (they waited almost seven months after Rothenberg's deposition to take action based on his testimony), Arbitrator Crane appropriately saw through Fay & Perles' smokescreen

and rejected their attempt to use the Rules of Professional Conduct as a "cloak" to justify an end-run around his jurisdiction in the Arbitration.[2]

Having failed to pull one over on Arbitrator Crane, Fay & Perles try again here, arguing that their client communications were "candid" and "accurate." Not so. They never told the Peterson clients that Perles previously made the same argument in a related lawsuit that he brought (making, essentially the same unjust enrichment argument at issue here), and they falsely suggested that Rothenberg's claims might imperil the clients' recovery without any evidence or justification. As Arbitrator Crane noted, their attempt to portray Rothenberg as saddled by a conflict, ignored "their own conflict in representing the Follow-On Plaintiffs who are competing with the Peterson plaintiffs to execute judgments against the same assets (Clearstream I and 650 Fifth Avenue)." See Award at 69. Fay claims that Arbitrator Crane wrongfully concluded that she was "manipulating" the clients but offers no rebuttal to the evidence that "Respondent Fay tells more than one Peterson plaintiff, in response to their confusion, that 'if you do not wish for him to represent you, you need to let him know by sending him an email.'" See id. at 68. As the conclusion of the Arbitration approached, Fay & Perles suggested that the Peterson clients should terminate Rothenberg's representation and then they spent months following up with and convincing every client to take such action. That is clearly a violation of Arbitrator Crane's order to "facilitate and not contest" Rothenberg's fee expectancy from upcoming distributions—and obviously an attempt to render the pending arbitration meaningless (including Rothenberg's claim for declaratory relief regarding future collections). Arbitrator Crane took appropriate remedial

---

[2] In fact, responding to the very same dilution argument, Fay & Perles "renegotiated [Lobbyist Sheldon Kamins'] fee in 2015 such that his fee was to be based on the recovery in the Davis and Bonk Actions as well as the Peterson Action" (when he had only been retained in the Peterson Action)—and yet Fay & Perles did not see the need to report that to the clients, even though the increase to Kamins' fee came out of clients' shares of recovery. See Award at 16.

action and this Court should not disturb it.

Fay & Perles argue that ethics obligations compelled their conduct and preclude sanctions, but disciplinary rules are not private shields that neutralize remedies for litigation misconduct. Indeed, the D.C. Rules—on which they rely—caution that they neither enlarge lawyer liability nor create rights for adversaries to weaponize the rules outside disciplinary proceedings. Fay & Perles rely on Matter of Silverberg (Schwartz), 75 A.D.2d 817, 819 (N.Y. Sup., 1980), but that decision is inapposite and involved a separation agreement "amount[ing] to a covenant restricting the practice of law"—not the issues raised here. The arbitrator appropriately rejected the ethics pretext and found that the campaign was designed to undercut his jurisdiction and the efficacy of relief in a pending fee dispute. Fay & Perles' reliance on Rule 1.5's prohibition against fee-sharing is more of the same—sanctioning Fay & Perles in an amount measured by fees lost by Rothenberg is not the same as sharing fees without client consent. Saying so does not make it so. The arbitrator's determinations are entitled to deference and provide far more than the "barely colorable justification" necessary to confirm the sanctions imposed.

2. The sanctions fall within the arbitrator's broad authority under the Agreement, the JAMS Rules and his inherent power; Fay & Perles presented their defense and the arbitrator rejected it.

The Arbitration Agreement covers disputes "relating to the attorneys' fees and litigation expenses" in the Beirut Marine Cases and related sharing arrangements with other counsel. It also contains a non-forum-shopping covenant channeling fee disputes to the Arbitration—not to the clients. Against that backdrop, Arbitrator Crane found that Rothenberg expressly sought declaratory relief to protect his future fee rights vis-à-vis the very Peterson client cohort at issue.[3]

---

[3] Indeed, Fay & Perles' end-run was retaliation for Rothenberg pursuing claims that they had expressly agreed to resolve through arbitration—a strike at the entire premise of the Arbitration that Arbitrator Crane appropriately and proportionally remedied through the compensatory sanctions.

Fay & Perles' targeted "coaxing" campaign to defeat that relief and render the arbitration "academic" falls squarely within the arbitrator's jurisdiction to protect the sanctity of the proceedings and requested relief, including through sanctions authorized by his inherent authority and JAMS Rule 29.[4]  Indeed, without that authority, Fay & Perles could agree to entrust Arbitrator Crane to decide the issues—in exchange for Rothenberg's commitment to bear his share of liability to Cook and others—only to renege on that commitment when they thought he might rule against them.  That is not the law, nor the paradigm created under the FAA.  See Conntech Dev. Co. v. Univ. Conn. Ed. Prop., Inc., 102 F.3d 677, 684 (2d. Cir. 1996) ("The Arbitration Act establishes, as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract, language itself or an allegation of waiver, delay, or a like defense to arbitrability.") (internal citations omitted).  The sanctions award flows directly from the Agreement and the Rules, not some "free-floating" notion of equity.  Whether grounded in the parties' agreement or incident to his jurisdiction more generally, Arbitrator Crane had jurisdiction to issue the sanctions.  Arbitrator Crane was in the best position to maintain order in the Arbitration and the Court should not second-guess or undermine his decision.

Fay & Perles complain that there was no separate evidentiary hearing and that the arbitrator "shifted" his rationale, but the record refutes both points.  Arbitrator Crane acted after written submissions by both parties and on an undisputed record of Fay & Perles' own communications—including the April 16 letter and numerous follow-up communications.  He grounded his adverse inference in a factual record that Fay & Perles did not meaningfully dispute or seek to supplement.  He explained that, independent of any particular phrasing in Order No. 7, their conduct violated

---

[4] Fay & Perles read Rule 29 to contain an exhaustive list of remedies, but it does not; Rule 29 authorizes "appropriate sanctions" and merely provides examples of what that "may include."

his directive to "facilitate and not contest" Rothenberg's undisputed entitlement to fees on the same Peterson clients, and that Rule 29 empowered a remedy for noncompliance and interference with the arbitration's integrity.  That is more than sufficient process to support the sanctions. Indeed, "[a]rbitration hearings … need not follow all the niceties observed by the federal courts" and "[i]t is well-settled that a federal court may not conduct a reassessment of the evidentiary record."  Ragusa v. Acme Markets, Inc., No. 24-5561, 2025 WL 1446893, *6-7 (S.D.N.Y., May 20, 2025) (internal citations and quotations omitted).  Importantly, "arbitrators are not required to hear *all* of the evidence, and are afforded broad discretion in determining what evidence is necessary, as long as they allow each party an adequate opportunity to present evidence and argument;" [i]t does not violate due process to issue a decision based on written submissions." Yonir Tech., Inc. v. Duration Systems Ltd., 244 F.Supp.2d 195, 209 (S.D.N.Y. 2002).  Nothing in the record suggests that Arbitrator Crane failed to give Fay & Perles an opportunity to submit evidence or argument and thus their petition is merely a request to relitigate issues decided by the arbitrator.

> 3.  <u>The sanctions are proportional, compensatory and targeted to actual harm.</u>

The arbitrator's sanction is expressly tied to actual shortfalls in fees to which Rothenberg would otherwise be entitled, measured against a concrete list of the same Peterson clients for whom he had been paid previously.  The sanction is not "draconian" or "indefinite"—it is a directly-proportional,  self-executing make-whole order.  Second Circuit precedent confirms that arbitrators may impose compensatory sanctions; labels aside, what matters is substance, and here the sanction clearly compensates rather than punishes.  Fay & Perles' own authorities recognize this distinction and thus do not support vacatur.

Fay & Perles argue that the sanctions were premised on "protecting" declaratory relief that Arbitrator Crane ultimately denied in a particular formulation, but that is incorrect.  The sanctions

served dual purposes: preserving the integrity of the arbitration against a client-coaxing end-run and compensating for resulting losses. They do not hinge on the precise wording of declaratory relief; the arbitrator explained as much, and Fay & Perles' attempt to isolate one sentence ignores the broader rationale he expressly articulated. Further, Fay & Perles highlight the wrong sentence, as they cannot claim with a straight face that their campaign to convince the clients to fire Rothenberg did not directly and flagrantly violate Arbitrator Crane's directive that Fay & Perles instead "facilitate and not contest" Rothenberg's entitlement to fees, as the arbitrator found.

Fay & Perles cite decisions vacating awards that addressed claims not submitted or imposed punitive sanctions without contractual authority, but those cases are readily distinguished. Here, the parties adopted the JAMS Rules, including Rule 29, empowering appropriate sanctions for noncompliance with orders and rules; and the sanction imposed is compensatory and tailored, not punitive. The issues decided—the Indirect Follow-On unjust enrichment claim and sanctions protecting the arbitration's integrity—were submitted, pleaded and litigated, or arose as inherent to preserving the arbitration's effectiveness in light of Rothenberg's request for prospective declaratory relief. This is the opposite of an arbitrator "dispensing his own brand of justice" untethered to the issues in the case. Indeed, it was Fay & Perles that attempted to dispense their own brand of justice by manipulating the clients to undermine Rothenberg's fee expectancy.

Fay & Perles also assert that the arbitrator "changed" the basis for the sanctions from a nonexistent "gag order" to disclosure violations. The record shows otherwise: the arbitrator grounded sanctions in the end-run that violated his directive to "facilitate and not contest" Rothenberg's undisputed fee entitlements and that undermined the arbitration's integrity—well within Rule 29 and his protective authority. Their proportionality argument fails for the same reason: the sanction is pegged to actual shortfalls and therefore compensatory, which ends the

punitive-damages objection under New York law and Second Circuit precedent alike. Labeling the sanctions "malpractice insurance" likewise obscures their structure. The arbitrator ordered Fay & Perles to cover only the dollar-for-dollar shortfalls in Rothenberg's fees caused by the client-coaxing campaign with respect to a defined cohort of Peterson clients for whom he had historically been paid. There is no open-ended exposure, no punitive multiplier and no obligation if no shortfall materializes. That remedy is as far from "indefinite" or "penal" as one can fashion; it narrows relief to the harm their conduct caused—precisely what compensatory sanctions require.[5] The Court should confirm the Award.

### B. The Unjust Enrichment Award Is Within The Scope of the Demand, Was Fully Litigated Without Objection And Is Supported by Controlling Precedent.

Although the arbitrator denied Rothenberg's larger claim for fee dilution, he credited Rothenberg's unjust enrichment claim in the Indirect Follow-On Cases. Like Rothenberg, Fay & Perles performed no work on those cases; however, using the joint work-product from the Peterson case to which Rothenberg had contributed, Fay & Perles negotiated compensation arrangements with the attorneys in those actions but did not share with Rothenberg—a classic case of unjust enrichment.

#### 1. The unjust enrichment claim was pleaded, litigated and any scope objection is waived.

Fay & Perles insist that unjust enrichment in the Indirect Follow-On matters was unpled and outside the arbitration, but the record says otherwise—and this proceeding is the first in which

---

[5] Perles asserts that Rothenberg "never alleged any harm that resulted from the supposedly sanctionable conduct," which he narrows to "the alleged failure to inform [Rothenberg] of the communications" in direct contravention of Arbitrator Crane's clear expression of a broader finding of sanctionable conduct. To be clear, the harm caused by Fay & Perles' end-run is that Rothenberg's entitlement to fees from future collections has been imperiled and the remedy, dollar-for-dollar sanctions if that is the case, remedies that harm precisely.

Fay & Perles have made that argument.  Rothenberg's Demand alleged that Fay & Perles negotiated referral and fee arrangements in follow-on cases to the exclusion of Rothenberg, citing specific examples (O'Brien and Brown), and pleaded an unjust enrichment count incorporating those facts.  The claim was fully litigated through discovery, expert testimony and hearing, without any timely arbitrability objection.[6]  "When a party has an opportunity to raise objections before the arbitration panel, under [the Second C]ircuit's jurisprudence failure to do so constitute a waiver."  Ashraf v. Republic N.Y. Sec. Corp., 14 F.Supp.2d 461, 467 (2d Cir. 1998).  Post-award, Fay & Perles cannot sandbag with a new scope theory.

New York law requires deference if there is any way to construe the agreement to cover the dispute.  The Arbitration Agreement references disputes over attorneys' fees and sharing arrangements relating to the Beirut Marine Cases and other Iran actions—precisely the terrain of the Indirect Follow-On fee extractions. At a minimum, the arbitrator's construction of his jurisdiction is eminently plausible and thus controlling under the governing standard.

2.    Pauwels, Not Beth Israel, Governs the Unjust Enrichment Analysis.

On the merits, the arbitrator found that the co-counsel agreement "had nothing to do with the use of Peterson work product" later monetized by Fay & Perles in Indirect Follow-On matters. As in Pauwels v. Deloitte, where the Second Circuit held unjust enrichment viable notwithstanding a contract covering some aspects of the parties' engagement because the enrichment concerned exploitation of a "blueprint" outside the contract's contemplation, the unjust enrichment here targets the re-use of the Peterson "work product" to obtain fees in cases in the Indirect Follow-On

---

[6] Fay & Perles inappropriately cite a February 2023 expert report submitted solely in connection with an early mediation; the mediation privilege and Rule 408 of the Federal Rules of Evidence bar reliance on those mediation materials.  Arbitrator Crane relied instead on the expert's October 23, 2023 affirmation, which he noted explicitly "calculates the damages for that branch of the unjust enrichment claim for which the Arbitrator has ruled in the Claimant's favor."  See Award at 60.

Cases where Fay & Perles did no additional merits work and where the clients had retained other counsel, not them.  That is different from the Direct Follow-On Cases (where Fay & Perles were directly retained and did perform merits work for the clients) that were covered by the language proposed by Rothenberg but rejected by Fay & Perles.  The existence of a co-counsel agreement without those Direct Follow-On Cases does not bar quasi-contract recovery for monetizing the shared work product in the Indirect Follow-On Cases to Rothenberg's exclusion.  The arbitrator, citing Pauwels, correctly so concluded.

Fay & Perles invocation of the "contract displaces quasi-contract" principle from cases like Beth Israel and Goldman misfires. Those decisions bar unjust enrichment where the contract governs the subject benefit.  Here, the arbitrator found—and petitioners do not seriously contest— that the specific benefit unjustly retained was the later downstream use of the Peterson "blueprint" in Indirect Follow-On actions, not fees arising under the four corners of the Peterson Co-Counsel Agreement. Pauwels permits unjust enrichment in such circumstances, and the arbitrator's application of that rule was at least "barely colorable," foreclosing vacatur.  Indeed, Fay & Perles ask the Court to disturb Arbitrator Crane's careful balancing of the equities—an ask that contravenes the fundamental nature of this proceeding.

3.    Measuring damages by fees does not violate public policy or fee-splitting rules.

Fay & Perles recast the unjust enrichment award as a fee-splitting regime requiring client consent, but that characterization is incorrect.  The award imposes a money judgment against Fay & Perles measured by fees because fees are the currency of the unjust enrichment; it does not alter client contracts, impose obligations on clients or require fee division among counsel without consent.  Indeed, the entire premise of the argument—that Rothenberg cannot be paid on account of clients by whom he was never retained—is a strawman; Fay & Perles were not directly retained by the Indirect Follow-On Plaintiffs either.  Arbitrator Crane correctly explained the distinction

between the two groups:

> The Direct Follow-On Cases are those that originated from publicity of the Peterson Action and were directly signed up by the Respondents. The Indirect Follow-On Cases are those cases that Respondents did not originate from publicity; they were brought by other attorneys, some of whom were damages attorneys. The Indirect Follow-On Cases used the work done in the Peterson Action; ***the Respondents performed no work in these cases but were paid an attorneys' fee***.

See Award at 9 (emphasis added). Courts disfavor public-policy vacatur, and none of Fay & Perles' authorities address—let alone condemn—an arbitrator's award of unjust enrichment damages measured by fees against attorney wrongdoers.

The arbitrator also included a direct-payment mechanism to avoid needless enforcement skirmishes; that practical feature neither converts the award into fee-splitting nor offends any explicit policy. Nor do the ethics rules help petitioners: the D.C. Rules' Scope provision admonishes that the rules neither enlarge civil liability nor create enforcement rights for adversaries. The Model Rules likewise warn against weaponization in collateral disputes. Fay & Perles' attempted "ethics" inflection is exactly the sort of cloak the arbitrator found to be a "subterfuge," and it provides no basis for this Court to vacate a reasoned, damages-focused award.

### C. The Arbitrator Properly Rejected Perles' Unclean Hands Defense, And FAA Deference Bars Re-Litigation.

Finally, Perles revisits his unclean hands defense, albeit simply by rehashing an argument that Arbitrator Crane unequivocally rejected as lacking evidentiary support. His argument is that Rothenberg somehow has unclean hands because he retained Stroock to pursue enforcement of judgments on behalf of competing judgment creditors. Tellingly, Fay does not join in this argument. Indeed, during the Arbitration, Fay stipulated that Rothenberg did not engage in a conflict of interest and that "by hiring separate enforcement counsel Allen Rothenberg addressed the potential conflict in the same way that the Fay and Perles group addressed it with respect to

Valore"—a reference to the fact that Fay & Perles retained the Fleischman Law Firm as collection

counsel (separate from Vogel) to enforce the Valore Judgment (one of the Indirect Follow-On

Cases).  See Transcript of Arbitration 356:9-358:6.  Perles likewise argues that Rothenberg is

"greedy" because he received significant fees while relying on others to do much of the work.

Arbitrator Crane expressly rejected this argument too:

> The Respondents have perpetuated their narrative in the face of
> evidence that the Claimant signed up over 500 of the plaintiffs
> named in the Peterson complaint.  ***This is the work the Claimant
> was asked to perform, and this is the work he performed.***  The
> Respondents did not present any compelling evidence of any work
> that the Claimant was required to perform in the Peterson Action
> that he either declined or failed to perform.

See Award at 25 (emphasis added).  What's more, Perles knowingly ignores that most of the post-

judgment collection work in the Peterson Action was performed by collection counsel (not him),

jointly paid for by Fay & Perles and Rothenberg.[7]    Indeed, Perles made no mention of

---

[7] Perles' filings are replete with knowing misstatements.  Perles asserts: "Unbeknownst to Perles
and Fay at the time [that they retained Cook], Rothenberg had already engaged Cook as collection
counsel in *Greenbaum* and *Acosta* to recover from the Clearstream Assets on behalf of non-Beirut
plaintiffs."  See Perles Petition to Vacate at 19.  On the contrary, Fay & Perles' engagement letter
with Cook contains Perles' own handwritten interlineation in the section referencing Cook's prior
retention in the Greenbaum case:

> The Greenbaum case is now the subject of a Judgment, and along with the Judgment in the
>
> Marine's Barracks Bombing Case, and any ancillary matters that may be presented to the
>
> Collection Service shall constitute the total caseload of Iran-related matters, given the size, ~~required by operation of law, compensatory damages in the~~
>
> nature, and commitment of handling these cases.  To the extent ~~feasible and possible, the~~
>
> Greenbaum judgment shall be paid first from any proceeds.  In the event of any collection.

Perles similarly misstates Rothenberg's contributions, denying credit for the pivotal work
Rothenberg did in recruiting not only the clients (including personally and with his staff) but also
the lobbyists and convincing them to work together on a contingent fee.  Perles likewise overstates
his own role, taking credit for the work of others hired and paid by the Peterson Attorneys
(including Rothenberg); however, the pervasiveness of the inaccuracies only highlights the need
to defer to the arbitrator rather than relitigate them here.  Arbitrator Crane was in the best position

Rothenberg's alleged greed or purported minor role when he asked Rothenberg to contribute his *pro rata* share toward the potential Cook-related liabilities and toward the cost of collection attorneys and damages attorneys, among other expenses jointly paid for by the Peterson Attorneys (including Rothenberg). Perles presented his unclean hands defense and Arbitrator Crane considered and rejected it because he "produced no viable evidence" of immoral or unconscionable conduct by Rothenberg. Under the FAA, the Court cannot revisit those record-based determinations, which comport with Fay's own stipulation that Rothenberg navigated the situation appropriately by hiring Stroock to represent the other judgment creditors. In any event, Arbitrator Crane's findings in that regard have no bearing on the discrete unjust enrichment finding relating to the Indirect Follow-On Cases, which is independently supported by undisputed facts credited by the arbitrator. Perles' argument fails and so should his petition.

## III.    CONCLUSION

With his experience from the Cook Arbitration, Arbitrator Crane was uniquely qualified to decide this Arbitration; indeed, his familiarity with the parties and the parties' familiarity with him undoubtedly factored into his selection. The only neutral observer present for ten hearing days spread out over nearly a year (from October 2023 to September 2024), Arbitrator Crane had to consider the evidence and render a decision; however, as the sole arbitrator, he was also tasked with maintaining order throughout that same extended period so that his decision would ultimately have meaning. A New York State judge at the trial and appellate courts for over 25 years, Arbitrator Crane is no stranger to maintaining order and he appropriately exercised the authority vested in him by the parties (both inherent and under the JAMS Rules) to prevent Fay & Perles from rendering the Arbitration "academic" through their end-run as the arbitration approached

---

to assess petitioners' credibility and this Court should not substitute its judgment for that of the arbitrator.

conclusion. His award of compensatory sanctions followed briefing and argument, and was grounded in a factual finding that Fay & Perles "coaxed" clients to terminate Rothenberg—a finding to which this Court must defer and about which there can be no reasonable disagreement in view of the avalanche of client terminations that followed Fay & Perles' April 16, 2024 letter and subsequent client communications. The sanctions are expressly proportional and will be significant monetarily only if Fay & Perles' gambit succeeds in denying Rothenberg fees from his former clients—as Arbitrator Crane concluded was their intention (describing their ethics cover-story as "subterfuge"). In the absence of those sanctions, Arbitrator Crane's decision to award Rothenberg unjust enrichment damages ($6,589,416 plus future damages measured by 21.61% of fees paid to Fay & Perles in the Indirect Follow-On Cases) could be mooted completely by losses associated with Rothenberg's termination. It should have come as no surprise to Fay & Perles that they could not take the law into their own hands and decide the arbitration themselves. Likewise, Fay & Perles used the joint work-product to which Rothenberg contributed to negotiate fees in the Indirect Follow-On Cases; there is nothing surprising or controversial about Arbitrator Crane's directive that they share proportionately. The arbitrator presided over lengthy proceedings, made credibility determinations, rejected Rothenberg's largest claim and crafted balanced remedies on others. His jurisdictional rulings fall well within New York's deferential approach to arbitral construction. His sanctions and unjust enrichment remedies derive from the parties' agreement, the JAMS Rules and governing law. And his factual findings are detailed and reasoned. Under binding precedent, that is more than enough to compel confirmation and reject Fay & Perles' invitation to start this arbitration over—particularly in view of the impossibility of returning the parties to their pre-arbitration status quo.

January 20, 2026

FOX ROTHSCHILD LLP
*/s/ Peter C. Buckley*
Peter C. Buckley, Esquire
2001 Market Street, Suite 1700
Philadelphia, PA 19103
(215) 299-2000
pbuckley@foxrothschild.com

Counsel for Allen L. Rothenberg,
The Law Firm of Allen L. Rothenberg, and
The Rothenberg Law Firm, LLP

## <u>CERTIFICATE OF SERVICE</u>

I, Peter C. Buckley, Esquire, do hereby certify that service of a true and correct copy of the foregoing document was made this day, via the Court's electronic filing system, upon all counsel of record.

January 20, 2026

*/s/ Peter C. Buckley*
Peter C. Buckley, Esquire