**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| Thomas Fortune Fay and The Fay Law Group, P.A., | |
| Petitioners, | Civil Action No. 1:25-cv-07613-LAP |
| v. | **Oral Argument Requested** |
| Allen L. Rothenberg, The Law Firm of Allen L. Rothenberg, and The Rothenberg Law Firm, LLP, | |
| Respondents. | |
| Allen L. Rothenberg, The Law Firm of Allen L. Rothenberg, and The Rothenberg Law Firm, LLP, | |
| Cross-Petitioners, | |
| v. | |
| Thomas Fortune Fay and The Fay Law Group, P.A., | |
| Cross-Petition Respondents. | |
| Steven R. Perles, Perles Law Firm, P.C., | |
| Petitioners, | |
| v. | Civil Action No. 1:25-cv-08219-LAP |
| Allen L. Rothenberg, The Law Firm of Allen L. Rothenberg, and The Rothenberg Law Firm, LLP, | |
| Respondents. | |

Fay and Perles FSIA Litigation Partnership,

Petitioner,

v.

Allen L. Rothenberg, The Law Firm of Allen
L. Rothenberg, and The Rothenberg Law
Firm, LLP,

Respondents.

Civil Action No. 1:25-cv-08281-LAP

**REPLY IN SUPPORT OF FAY'S PETITION TO VACATE
AND IN OPPOSITION TO ROTHENBERG'S CROSS-PETITION
<u>TO CONFIRM THE FINAL AWARD</u>**

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES.................................................................................................................ii

INTRODUCTION ..........................................................................................................................1

ARGUMENT ..................................................................................................................................2

I.      The award conflicts with the Rules of Professional Conduct, violating public
        policy...................................................................................................................................2

II.     The arbitrator decided issues beyond the scope of the arbitration agreement ...................4

III.    The arbitrator exceeded the limits of his sanctions authority and violated public
        policy by issuing a punitive award......................................................................................8

        A.      The arbitrator exceeded his sanctions authority under Rule 29.............................8

        B.      The sanctions award violates public policy against punitive arbitration
                awards ...................................................................................................................10

CONCLUSION...............................................................................................................................13

**TABLE OF AUTHORITIES**

**Cases**

*D.H. Blair & Co. v. Gottdiener*,
    462 F.3d 95 (2d Cir. 2006) ................................................................................................ 3

*Douglas v. N.Y. State Adirondack Park Agency*,
    895 F. Supp. 2d 321 (N.D.N.Y. 2012) ............................................................................. 3

*Eletson Holdings, Inc. v. Levona Holdings Ltd.*,
    731 F. Supp. 3d 531 (S.D.N.Y. 2024) .............................................................................. 9

*Fahnestock & Co. v. Waltman*,
    935 F.2d 512 (2d Cir. 1991) ........................................................................................... 11

*Grynberg v. BP Expl. Operating Co.*,
    92 A.D.3d 547 (N.Y. App. Div. 2012) ........................................................................... 12

*iPayment, Inc. v. 1st Americard, Inc.*,
    2016 WL 1544736 (S.D.N.Y. Mar. 25, 2016) ................................................................. 8

*John Hancock Life Ins. Co. v. Wilson*,
    254 F.3d 48 (2d Cir. 2001) ............................................................................................... 7

*Loc. 458-3M, Graphic Commc'ns
Int'l Union, AFL-CIO v. Carqueville Printing Co.*,
    1992 WL 132854 (N.D. Ill. May 29, 1992) ..................................................................... 8

*Matter of Silverberg (Schwartz)*,
    75 A.D.2d 817 (N.Y. App. Div. 1980) ............................................................................. 3

*On Time Staffing, LLC v. Nat'l Union Fire Ins. Co.*,
    784 F. Supp. 2d 450 (S.D.N.Y. 2011) ............................................................................. 9

*Opals on Ice Lingerie v. Bodylines Inc.*,
    320 F.3d 362 (2d Cir. 2003) ............................................................................................. 8

*Pauwels v. Deloitte LLP*,
    83 F.4th 171 (2d Cir. 2023) .............................................................................................. 6

*ReliaStar Life Ins. Co. v. EMC Nat'l Life Co.*,
    564 F.3d 81 (2d Cir. 2009) ......................................................................................... 11, 12

*Subway Int'l, B.V. v. Subway Russia Franchising Co.*,
    735 F. Supp. 3d 332 (S.D.N.Y. 2024) .............................................................................. 3

*Synergy Gas Co. v. Sasso*,
    853 F.2d 59 (2d Cir. 1988) .............................................................................................. 11

*Virgilio v. City of New York*,
    407 F.3d 105 (2d Cir. 2005) ........................................................................................ 11

**Rules**

Am. Bar Ass'n,
    Model R. Pro. Conduct, Preamble & Scope ............................................................... 3

D.C. R. Pro. Conduct 1.5 ................................................................................... 1, 2, 3, 4

D.C. R. Pro. Conduct, Scope ....................................................................................... 4

JAMS Comprehensive Arbitration Rules & Procedures R.29 .............................. *passim*

**INTRODUCTION**

In awarding Rothenberg tens of millions of dollars in fees from plaintiffs who fired him or never hired him, the arbitrator committed three egregious errors supporting vacatur: (1) the award divides attorneys' fees without client consent in contravention of the Rules of Professional Conduct, thus violating public policy; (2) the award exceeds the scope of the parties' Arbitration Agreement and Rothenberg's Demand for Arbitration, neither of which addressed Rothenberg's alleged entitlement to fees in cases in which Fay or Perles obtained referral-fee arrangements; and (3) the sanctions award exceeds the arbitrator's sanctions authority because it was neither "appropriate" nor tied to a violation of the arbitrator's orders, as required by JAMS Rule 29, and also violates strong public policy against punitive arbitration awards.

Rothenberg tries to obfuscate these issues, but he cannot defend the arbitrator's *ultra vires* award. First, Rothenberg does not meaningfully dispute that Rule 1.5(e) of the D.C. professional rules embodies a well-established public policy requiring client consent to a division of fees. The relief that Rothenberg sought in arbitration needed to conform to that public policy. Rothenberg complains (at 22) that Fay and Perles are wielding the professional rules as a "procedural weapon," but in fact it is Rothenberg that improperly used the arbitration as a vehicle to evade the public policy requiring client consent to fee-splitting arrangements. Far from making misbehaving attorneys "immune" in fee disputes (at 22), adherence to the public policy of Rule 1.5(e) would preclude only relief that effectively reallocates fees without client consent, as the award does here by assigning to Rothenberg money from clients that fired him or never hired him.

Second, Rothenberg's expansive interpretation of the scope of the Arbitration Agreement and Demand depends on his improper conflation of sharing agreements (the agreements among clients to share damages that enabled recovery in *Peterson*) with referral agreements (the fee-splitting arrangements that Fay and Perles entered into with other lawyers in the Follow-On Cases).

But Rothenberg himself consistently distinguished between sharing agreements and referral arrangements, including in his own Demand. This demonstrates that the Arbitration Agreement does not encompass disputes concerning the referral arrangements.

Third, Rothenberg's efforts (at 16-19) to recast the arbitrator's sanction as an appropriate effort to uphold the "sanctity" of the arbitration ignores the law and is belied by the award itself. The arbitrator's sanction authority is cabined both by JAMS Rule 29—which requires that a sanction remedy be for a proven violation of a specific order or obligation—and the public policy against punitive arbitration awards. The JAMS Rules do not anywhere grant an arbitrator the "broad authority" Rothenberg supposes. Here, the only specific violation the arbitrator cited as a basis for the sanction was the alleged failure to disclose to Rothenberg certain communications. The arbitrator's sweeping, prospective sanction cannot be reasonably described as compensation for that alleged partial violation of a mere disclosure obligation.

This Court should vacate the award.[1]

## ARGUMENT

**I.    The award conflicts with the Rules of Professional Conduct, violating public policy.**

As Fay explained, the award must be vacated as contrary to public policy because it defies the D.C. Rules of Professional Conduct. Rothenberg does not dispute that under the Federal Arbitration Act, an award can be vacated for violating well-established public policy. Nor does Rothenberg seriously contest that Rule 1.5(e), which requires client consent for a division of attorneys' fees, reflects a well-defined and dominant public policy that clients have the right to control how their fees are allocated. *See* Fay Mem. 16-17. The entire award (including the sanction) contradicts that public policy because it allocates millions of dollars in fees to Rothenberg for

---

[1] All docket references refer to the lead docket No. 1:25-cv-07613-LAP (S.D.N.Y.).

2

clients that fired or never hired him, effectively rewriting the clients' fee agreements without their consent.

Rothenberg tries to avoid that straightforward conclusion, but his efforts are unavailing.[2]

*First*, Rothenberg contends (at 21) that holding that the award violates public policy by commanding an impermissible fee-sharing agreement would "make new law." Not so. In *Matter of Silverberg (Schwartz)*, a New York court stayed the arbitration of a contract on the ground that the contract's "division of legal fees without regard to services actually rendered" is "void and against public policy." 75 A.D.2d 817, 819 (N.Y. App. Div. 1980). If a "broad" arbitration clause is unenforceable where the underlying contract violates the public policy governing division of fees, *id.* at 818, it follows that an arbitration award that violates the same public policy also is unenforceable and must be set aside. *Silverberg* thus provides ample support for Fay and Perles's argument here that the award must be set aside for commanding a result that violates Rule 1.5(e).

*Second*, Rothenberg accuses Fay and Perles of using the professional rules as a "'procedural weapon[]'" because the rules are "not 'intended to confer rights on an adversary of a lawyer to enforce the Rules in a proceeding other than a disciplinary proceeding.'" Rothenberg Mem. 22 (first quoting Am. Bar Ass'n, Model R. Pro. Conduct, Preamble & Scope ¶ 20 and then

---

[2] In his brief, Rothenberg seeks to "incorporate[] by reference his Answer to Petition to Vacate and Cross-Petition to Confirm Arbitral Award." Rothenberg Mem. 1. An answer is not an appropriate vehicle for briefing a petition under the FAA, so it cannot be "incorporated" into Rothenberg's memorandum of law—a move that would improperly enable him to circumvent this Court's word limits. *See* Dkt.25 ¶ 2; *Subway Int'l, B.V. v. Subway Russia Franchising Co.*, 735 F. Supp. 3d 332, 342 (S.D.N.Y. 2024) ("The answer and cross-petition were improper because petitions to confirm (or vacate) arbitration awards are treated as 'motions in an ongoing proceeding rather than' as pleadings" (quoting *D.H. Blair & Co. v. Gottdiener*, 462 F.3d 95, 108 (2d Cir. 2006))), *aff'd*, 2025 WL 1363870 (2d Cir. May 12, 2025). Absent court approval, *see, e.g.*, Dkt.25 ¶ 3, "[a] party may not articulate a legal argument simply by 'incorporating by reference' the argument presented in another document." *Douglas v. N.Y. State Adirondack Park Agency*, 895 F. Supp. 2d 321, 362 n.32 (N.D.N.Y. 2012).

quoting D.C. R. Pro. Conduct, Scope ¶ 4). But as Fay has already explained, Fay Mem. 18-19, Fay is not using Rule 1.5(e) to hold Rothenberg liable for a violation of ethical rules. The *award* is unenforceable to the extent it violates Rule 1.5(e).

*Third*, Rothenberg insists (at 22) that "[t]he Award of unjust enrichment damages in the Indirect Follow-On Cases is not an impermissible fee-sharing arrangement but simply an award of damages measured by attorneys' fees—the subject matter of the dispute." But Rothenberg does not deny that this award puts him in the same position as if he were entitled to the plaintiffs' fees or that the arbitrator mandated the award be paid directly to Rothenberg without passing through Fay and Perles. Fay Mem. 19; *see also* Dkt.29-11 at 79. Under Rule 1.5(e), that entitlement can come only from a fee-splitting agreement with client consent. Fay Mem. 19. Otherwise, Rothenberg will be collecting from clients who fired him, in direct opposition to their wishes.

Finally, contrary to Rothenberg's suggestion (at 22), this argument does not mean that "a wrongdoing attorney would be immune against claims of unjust enrichment wherever the subject matter of the wrongdoing involved legal fees."[3] It means only that a claim of unjust enrichment cannot allocate fees without client consent. Fay Mem. 19.

## II.    The arbitrator decided issues beyond the scope of the arbitration agreement.

Rothenberg tries in vain to defend the arbitrator's forays beyond the four corners of the Arbitration Agreement. The arbitrator treated Rothenberg's unjust enrichment claim as an open-ended license to do "justice" as the arbitrator saw fit. Yet as Fay explained, the Agreement carefully

---

[3] Rothenberg echoes the arbitrator's claim that Respondents are "cloaking themselves in the Rules of Professional Conduct <u>to steal</u> the Claimant's fees derived from the plaintiffs he represents in the <u>Peterson</u> Action." Rothenberg Mem. 4 (emphasis altered). That accusation is baseless. As Fay explained during the arbitration, no one attempted to "steal" anything—any "disputed amounts could be held in escrow pending the resolution of those disputes between Rothenberg and the clients, in accordance with the rules of professional responsibility and the applicable ethics opinions." Dkt.1 ¶ 94.

4

defined the "Fee Dispute" to cover only disputes "relating to the attorneys' fees and litigation expenses in" specified "Beirut Marine Cases." Fay Mem. 20 (quoting Dkt.29-7 at 2 (timestamp pagination)). The Agreement also made clear that the question to be arbitrated was "whether Rothenberg is entitled to compensation from Fay and Perles caused by and/or related to" certain "sharing agreements." *Id.* (quoting Dkt.29-7 at 2 (timestamp pagination)).

Rothenberg's Demand confirmed this understanding of the Arbitration Agreement. *Id.* at 20-21. The Demand did not include *any* claims alleging a supposed entitlement, based on his purported "ownership" of one-third of the *Peterson* work product, to receive a cut of fees from Fay and Perles's Follow-on Cases. *Id.* Instead, Rothenberg's Demand only asserted claims based on his theory that the sharing agreements—which the Demand identified as the Marines Cooperation Agreement and the 87/13 Agreement—had diluted his anticipated fees from *Peterson* by allowing other victims of Iran-backed terrorism to share in any recovery from the same pool of assets. *Id.* That the Demand did not allege an entitlement to a cut of Fay and Perles's fees in the Follow-on Cases is no surprise because Fay and Perles had specifically rejected Rothenberg's proposal to that effect in entering into the Co-Counsel Agreement. In sum, the work-product theory of unjust enrichment was neither included in the Demand nor within the scope of the Arbitration Agreement.

In response, Rothenberg offers a half-baked, transparently misleading interpretation of the Arbitration Agreement. His key move is to conflate the *sharing* agreements with what his own Demand separately identifies as *referral* agreements. Rothenberg Mem. 17-18. The term "sharing agreement" naturally refers to the Marines Cooperation Agreement and the 87/13 Agreement. *E.g.*, Ex.1 (2012 letter from Fay and Perles to clients asking for their consent to negotiate a "sharing agreement"); Ex.2 (2012 client consent form for "sharing" agreement). That term has never been

5

understood to refer to fee-splitting arrangements in follow-on cases. Indeed, the Demand itself consistently distinguishes between "sharing" agreements—applying only to the Marines Cooperation Agreement and the 87/13 Agreement—and "referral fee arrangements," meaning Fay's and Perles's negotiation of fees for themselves in certain follow-on cases. Fay Mem. 20-21.

Rothenberg nevertheless asserts that he "pursued that [particular unjust enrichment] claim throughout" the arbitration, Rothenberg Mem. 7, pointing to an "expert report and expert testimony articulating those damages," *id.* at 18. But as Fay previously noted, the very expert report that Rothenberg invokes does not include the work-product theory. Fay Mem. 23 n.5.

The Second Circuit's decision in *Pauwels v. Deloitte LLP*, 83 F.4th 171 (2d Cir. 2023), *see* Rothenberg Mem. 24-25, does nothing to aid Rothenberg's scope-of-arbitration argument. In *Pauwels*, the defendants copied a valuation model the plaintiff created without his authorization, and the court held that the plaintiff adequately pleaded an unjust enrichment claim on that basis. 83 F.4th at 188. But *Pauwels* did not address the scope of an arbitration clause or demand—in fact, it did not involve arbitration at all—and its holding is therefore entirely inapposite. Fay and Perles are not arguing that a work-product theory of unjust enrichment can never be viable; the argument is that such a claim was not among those to be arbitrated—indeed, it could not have been because the subject matter was covered by a contract, *see* Fay Mem. 22.[4]

Unable to dodge the reality that the award went beyond the arbitration's proper scope, Rothenberg asserts that Fay and Perles's "interpretation of the Arbitration Agreement is

---

[4] Rothenberg also repeatedly cites *Perles v. Drennan*, insisting that Perles made a similar unjust enrichment argument "successfully" against other attorneys. Rothenberg Mem. 11-12, 13, 18, 22, 25. But even assuming that suit—which involved different facts, ended in a settlement, and was never litigated—featured a similar unjust enrichment theory, Rothenberg misses the point: he failed to include that theory in his Demand, and that theory lies beyond the scope of the Arbitration Agreement.

inconsistent with the circumstances of its making." Rothenberg Mem. 17-18. Rothenberg says he "took on $40+ million of risk related to … claims" in an earlier arbitration "to secure the right to arbitrate the parties' disputes" and that by agreeing to arbitrate, he provided Fay and Perles valuable consideration. *Id.* But these alleged "circumstances," even if they had been proven, do nothing to indicate that the parties agreed to arbitrate Rothenberg's claims relating to the Follow-On Cases. And such "circumstances" could never overcome the plain language of the Agreement in any event. *See John Hancock Life Ins. Co. v. Wilson*, 254 F.3d 48, 58 (2d Cir. 2001) ("Like any other contract, courts must interpret an arbitration provision to give effect to the parties' intent as expressed by the plain language of the provision."). Rothenberg should not have been allowed to prevail on a theory that was not covered by the Agreement and that he did not articulate in the Demand.

Finally, Rothenberg argues that Fay and Perles waived the argument that the arbitrator's unjust enrichment determination was improper because they failed to raise it until "after the Award." Rothenberg Mem. 7; *id.* at 18-19. That is incorrect. Fay made clear well before the arbitrator issued the award his position that the arbitration applied only to Rothenberg's theory that allowing additional plaintiffs to share in the recovery of damages unfairly diluted his fees. For example, in a hearing, Fay and Perles objected to Rothenberg's characterization of his unjust enrichment theory as based on work product in the referral cases and explained that his theory was based on "entering into the [Marines Cooperation] [A]greement and nothing thereafter." Ex.3 at 374. And in Fay's briefing asking the arbitrator to reconsider Order No. 7 and the interim sanctions award, Fay argued that Rothenberg's unjust enrichment claim "was limited to the effects of the [Marines Cooperation Agreement]." Dkt.29-23 at 25-26; *see also* Ex.4 at 1-2; Ex.5 at 1-2. This is sufficient to preserve this argument. *See, e.g.*, *iPayment, Inc. v. 1st Americard, Inc.*, 2016

7

WL 1544736, at *5 (S.D.N.Y. Mar. 25, 2016) (no waiver of party's challenge to scope of arbitration where that objection was raised in the arbitration (citing *Opals on Ice Lingerie v. Bodylines Inc.*, 320 F.3d 362, 368-69 (2d Cir. 2003))); *see also Loc. 458-3M, Graphic Commc'ns Int'l Union, AFL-CIO v. Carqueville Printing Co.*, 1992 WL 132854, at *3 (N.D. Ill. May 29, 1992) (similar).

### III. The arbitrator exceeded the limits of his sanctions authority and violated public policy by issuing a punitive award.

Rothenberg fares no better in defending the arbitrator's sweeping sanctions award. The sanctions award—requiring Fay and Perles to pay tens of millions of dollars now and millions more indefinitely into the future, all for a violation of a document disclosure obligation—vastly exceeded the arbitrator's authority under the parties' agreement and JAMS Rule 29 and flouts New York's public policy prohibiting punitive arbitration awards. Fay Mem. 23-28. Rothenberg attempts to defend the sanctions award by ignoring the plain text of Rule 29, overlooking the arbitrator's own explanation of the basis for his sanction, and claiming, without substantiation, that the award was merely compensatory. But the sanction's inescapable and fatal flaw is that it is untethered to any harm supposedly caused by the discovery violation the sanction supposedly redressed. Instead, it is quite obviously tethered to the loss Rothenberg suffered on account of hundreds of clients firing him. That is an impermissibly punitive remedy for a violation of an arbitrator's disclosure order.

### A. The arbitrator exceeded his sanctions authority under Rule 29.

As Fay has explained, JAMS Rule 29 authorizes "appropriate" sanctions "for the failure of a Party to comply with its obligations under … [JAMS] Rules or with an order of the Arbitrator." Fay Mem. 24-26 (quoting Dkt.29-11 at 71). To avoid Rule 29's requirement that sanctions respond to a "failure to comply" with a specific "order," Rothenberg first attempts to recast the sanction here as an exercise of an arbitrator's purported authority to prevent parties from "undermin[ing]"

8

the arbitration. Rothenberg Mem. 19 (quoting Dkt.29-11 at 71). Rothenberg then contends, contrary to the arbitrator's own explanation of his sanctions award, that even if the sanction was based on a violation of Order No. 7, it was not based on the alleged violation of the *non-disclosure* obligation in Order No. 7.

**1.** Perhaps recognizing that the arbitrator's sanctions award is indefensible on its own terms, as a response to an alleged violation of Order. No. 7, Rothenberg tries to justify it by appealing to vague notions such as the "sanctity" of the arbitration. Rothenberg Mem. 17. Rothenberg relies heavily on cases recognizing the flexibility that arbitrators have to craft *remedies* such as interim relief. *See id.* at 19 (citing *Eletson Holdings, Inc. v. Levona Holdings Ltd.*, 731 F. Supp. 3d 531, 584 (S.D.N.Y. 2024); *On Time Staffing, LLC v. Nat'l Union Fire Ins. Co.*, 784 F. Supp. 2d 450, 455 (S.D.N.Y. 2011)). But none of those cases suggests that an arbitrator can award *sanctions* that exceed the prescribed limits on the arbitrator's sanctions authority. For example, Rothenberg seizes on snippets of language from *On Time Staffing*, but that case did not involve a challenge to a sanctions order, and the court accordingly said nothing about the arbitrator's power to order sanctions. 784 F. Supp. 2d at 453. And in *Eletson*, though the court acknowledged an arbitrator's power to award sanctions, 731 F. Supp. 3d at 598, it emphasized the limitations in JAMS Rule 29, which governs that power when parties agree to arbitrate under the JAMS rules. *Id.* at 598-600.

Rothenberg's attempted reframing sidesteps Rule 29's central requirement: sanctions must respond to a party's failure to comply with a specific order, not to generalized concerns about parties "undermining" arbitration. As even Rothenberg ultimately concedes, an arbitrator's "broad authority" exists to "address violations of [the arbitrator's] *own orders*." Rothenberg Mem. 20 (emphasis added); *see also* Dkt.29-11 at 70-71 (sanctions issued "for the failure of a Party to

comply with ... an order of the Arbitrator" (quoting JAMS Rule 29)). The only order at issue here is Order No. 7, which contained two narrow directives: (1) disclose communications with shared clients about Rothenberg or the arbitration, and (2) "facilitate and not contest" Rothenberg's pro rata claim to certain fees in the 650 Fifth Avenue matter. Dkt.29-9 at 10-12. To comply with Rule 29, therefore, the sanction must be an "appropriate" response to a violation of that order.[5]

**2.** Rothenberg next contends that even if the sanction must respond to a violation of Order No. 7, Arbitrator Crane did not base the sanction on the disclosure directive but rather on the "facilitate and not contest" language. Rothenberg Mem. 19. The problem with this theory is that there is simply no basis for it in Order No. 7. The arbitrator expressly based his sanctions award on Fay and Perles's purported "clandestine communications" with their clients, not on any failure to "facilitate" the payment of certain fees from the 650 Fifth Avenue litigation. Dkt.29-11 at 70, 72; Fay Mem. 25. Rothenberg's desperation to frame the sanctions award as a response to something other than the mere violation of Order No. 7's disclosure obligation underscores just how *inappropriate* that award was. *See* Fay Mem. 24-25.

### B.    The sanctions award violates public policy against punitive arbitration awards.

The sanctions award must be vacated for the independent reason that it violates New York's categorical prohibition on punitive arbitration awards. Rothenberg does not dispute that New York public policy categorically forbids punitive arbitration awards. *See* Fay Mem. 26-27 (citing, *e.g.*,

---

[5] Moreover, nothing Fay or Perles did undermined the arbitration's "sanctity" or the arbitrator's ability to grant meaningful relief on the claims in Rothenberg's demand. In fact, the arbitrator fully and fairly considered Rothenberg's various dilution-based claims and denied Rothenberg relief. *See generally* Dkt.29-11. Rothenberg's counsel himself described the sanction as "meaningful relief" in its own right, not just a means of protecting other relief. Ex.6 at 13. Ultimately, the sanction functioned like damages for an unpled tortious interference claim, not like any measure contemplated by Rule 29.

*Fahnestock & Co. v. Waltman*, 935 F.2d 512, 518 (2d Cir. 1991)). A monetary sanction imposed by an arbitrator must be "compensatory, not penal." *ReliaStar Life Ins. Co. v. EMC Nat'l Life Co.*, 564 F.3d 81, 86-87 (2d Cir. 2009). A sanction is punitive when it seeks to punish rather than compensate for proven injury. *See Virgilio v. City of New York*, 407 F.3d 105, 116 (2d Cir. 2005). That the sanction here is punitive is clear not only from its wildly disproportionate magnitude but also from Arbitrator Crane's rhetoric accusing respondents of "flagrant[]" violations, "subterfuge," and attempts to "steal" Rothenberg's fees. Dkt.29-11 at 69, 71. Rothenberg strains to portray the sanction as merely compensatory, but his arguments fall flat.

*First*, Rothenberg asserts that the award is "directly proportional to the harm" because "[i]f there is no shortfall, there is no sanction." Rothenberg Mem. 25-26. But a sanction must be proportionate to the harm actually caused by the sanctioned parties' violation. *See ReliaStar*, 564 F.3d at 86-87 (explaining that an award is compensatory if it "fairly compensated the party for costs incurred *as a result of such actions*" (emphasis added) (citing *Synergy Gas Co. v. Sasso*, 853 F.2d 59, 65 (2d Cir. 1988))).

Here, the "shortfall" does not correspond to harm caused by the alleged violation of Order No. 7. Instead, the "no shortfall, no sanction" characterization demonstrates clearly that the harm the arbitrator's sanction sought to redress stems instead from Rothenberg's clients firing him. For this reason alone, the sanction must be vacated. It is, on Rothenberg's own description, not related to the supposed violation of Order No. 7.

Moreover, even if the arbitrator permissibly could sanction Fay and Perles for allegedly inducing Rothenberg's clients to fire him—and he could not—the arbitrator made no effort to calibrate the sanction to their responsibility for the firings. The sanction encompasses 100% of all fees Rothenberg fails to receive from all future recoveries of all of the hundreds of clients who

11

fired him after receiving the letter from Fay and Perles, regardless of whether that letter was 100% of the cause of those clients firing Rothenberg. The amount of the "shortfall" includes terminations predating Order No. 7, terminations by clients who never saw *any* communication from respondents, and terminations that may have occurred for reasons entirely independent of Fay and Perles's failure to disclose communications. Among other possibilities, the arbitrator never considered whether Rothenberg's *own* conduct was responsible, in whole or in part, for the terminations, either because of Rothenberg's performance as an attorney or because of his decision not to communicate with his clients about Fay and Perles's letter. For the sanction to be "compensatory," therefore, the arbitrator's reasoning must have rested on an impossible counterfactual: that had Fay and Perles disclosed every post-order communication in real time, every single client who terminated Rothenberg, including those who terminated him before Order No. 7 and those who acted for reasons unrelated to the communication, would have chosen to retain him indefinitely and continued to generate millions of dollars in future fees.

*Second*, having failed to tie the sanction to harm that was "a result of" a violation of Order No. 7, *ReliaStar*, 564 F.3d at 86-87, Rothenberg argues that the arbitrator's failure to label the sanction "punitive" somehow weighs against vacatur. Rothenberg Mem. 26. As Fay noted, however, labels are not dispositive. Fay Mem. 27. What matters is the substance of the remedy, "regardless of the label attached." *Grynberg v. BP Expl. Operating Co.*, 92 A.D.3d 547, 548 (N.Y. App. Div. 2012). Despite Rothenberg's attempt to rebrand the award as compensatory, there can be no doubt that it is in substance punitive.

12

## CONCLUSION

This Court should vacate the award in its entirety.

DATED:    New York, New York       **KING & SPALDING LLP**
          January 20, 2026

By:  */s/ Matthew D. McGill*
      Matthew D. McGill
      Alexander Kazam
      KING & SPALDING LLP
      1700 Pennsylvania Avenue NW
      Washington, DC 20006
      (202) 737-0500
      matthew.mcgill@kslaw.com
      akazam@kslaw.com

      *Counsel for Thomas Fortune Fay and*
      *The Fay Law Group, P.A.*

## CERTIFICATE OF COMPLIANCE WITH WORD-COUNT LIMITATION

I hereby certify that this Reply in Support of Fay's Petition to Vacate and in Opposition to Rothenberg's Cross-Petition to Confirm the Final Award complies with the type-volume limitation of this Court's November 13, 2025 Order, Dkt.25, because it contains 4,000 words, excluding the parts of the document exempted by L. Civ. R. 7.1(c).

DATED:    New York, New York    **KING & SPALDING LLP**
          January 20, 2026

                              By:  */s/ Matthew D. McGill*
                                   Matthew D. McGill

                                   *Counsel for Thomas Fortune Fay and*
                                   *The Fay Law Group, P.A.*

14